1997 OK 101

**Deborah NICKELL, an individual, Appellant,**

v.

**Ernie SUMNER, an individual, Appellee.**

**No. 84650.**

Supreme Court of Oklahoma.

July 15, 1997.

David W. Van Meter, Howard K. Berry, III, of Berry & Van Meter, Oklahoma City, for the appellant.

Harris A. Phillips, of Niemeyer, Noland & Alexander, Oklahoma City, for the appellee.

LAVENDER, Justice.

¶ 1 Two issues are presented for our consideration on certiorari—whether the real property involved in this case is situated in a "rural area" within the meaning of 4 O.S.1991 § 42.3, *infra*, and, if not, whether liability for personal injury under 4 O.S.1991 § 42.1 (the "dog-bite" statute), *infra*, may be imposed upon the owner of a dog that attacks a horse and causes the horse to buck the rider, who is then injured in the fall. We hold that § 42.3's rural-area exception does not protect the owner from liability in this case, but we further hold that the claim against this owner is not contemplated by § 42.1, the statute upon which strict liability is sought to be predicated.

¶ 2 The plaintiff, Deborah Nickell ("rider"), frequently rode horses and was capable of safely handling and training them under ordinary circumstances. For the purpose of barrel racing she became interested in purchasing a horse owned by the defendant, Ernie Sumner ("owner"), who lived within the city limits of Yukon, Oklahoma, on a ten-acre tract. He kept several horses as well as a dog (a Doberman Pinscher) on his property. The horse in which the rider was interested was a two-year-old "green broke" quarter horse. The record indicates that "green broke" refers to a horse that accepts a saddle, can be ridden, but is not fully trained

and may require special care before being mounted.

¶ 3 A neighbor of the owner, who was also acquainted with the rider, knew that the rider had been looking for a barrel-racing horse and asked the owner whether he knew of any horses for sale. The owner gave the neighbor permission to meet the rider at his property to look at (and perhaps ride) the horse while the owner was out of town. The neighbor was told of the horse's "green" characteristic and shown where it was kept.

¶ 4 When the rider arrived, she was met by the owner's dog, which seemed friendly. She bent down and petted him. The dog followed her to the barn, where she inspected the horse before mounting it. She rode the horse in a fenced pasture for 15 to 30 minutes without incident. In the meantime, the dog stood by the neighbor, who was petting it. The dog then unexpectedly began chasing the horse, barking and, according to the rider, trying to bite the horse's legs. This caused the horse to buck the rider off. After the rider was thrown from the horse, the dog continued to bark and chase the horse, which continued to run and buck. The rider became unconscious from the fall for a short time, and she later sued the owner to recover for bodily injury.

¶ 5 Two alternative theories of recovery were asserted—(1) common-law negligence and (2) statutory (or strict) liability, which may be imposed without regard to fault, under 4 O.S.1991 § 42.1:

> The owner or owners of any dog shall be liable for damages to the full amount of any damages sustained when his dog, without provocation, bites or injures any person while such person is in or on a place where he has a lawful right to be.

Both parties sought a partial summary adjudication on the issue whether the statute applies. The owner maintained that this claim falls within the exception prescribed by 4 O.S.1991 § 42.3:

> Provided that this Act *shall not apply to rural areas of this State or to any cities or towns that do not have city or village United States Mail delivery service.* Provided, nothing herein shall be construed as diminishing any right or liability for injury by dog bites now existing under the laws of this State. (Emphasis added.)

¶ 6 The trial court agreed with the owner, and the case was tried to a jury on the negligence theory alone. The verdict favored the owner, and the rider appealed from the judgment.

■ ¶ 7 The Court of Civil Appeals reversed the judgment and remanded the case for a new trial only under the theory of statutory liability. It held that the exception for rural areas does not apply in this case, because the owner's property lies within the city limits of Yukon, Oklahoma, and the property does have United States mail delivery service. On the owner's petition this Court granted certiorari. While we agree that § 42.3's exception is unavailable to the owner, we conclude that the judgment should nonetheless be affirmed. A correct judgment will stand even if it rests, in part, on erroneous reasoning. *Utica Nat. Bank and Trust Co. v. Associated Producers Co.,* 1980 OK 172, 622 P.2d 1061, 1066.

### I.

### THE "RURAL AREAS" EXCEPTION PROVIDED BY § 42.3 DOES NOT SHIELD THE OWNER FROM LIABILITY

¶ 8 In support of his contention on certiorari that the appellate court misapplied Oklahoma law by declining to view his property as "rural," the owner points out numerous undisputed facts, which had been presented to the trial court. They are that the owner's property (or residence) is situated within Yukon's city limits, that U.S. mail service extends to his residence, that the property exceeds five acres, that a house, a large barn, several fields of crop, and several pastures where horses and other animals are kept exist on the owner's property, that "city utilities" do not extend to the property, that the property is zoned as "agricultural," and that it has an agricultural use and is located in a "rural taxing district."

¶ 9 In support of his position that the property is located within a rural area and

therefore falls outside the ambit of § 42.1, the owner also refers to the Rural Ambulance Services Districts Act, 19 O.S.1991 § 1202(5), which defines "rural area" as including

> * * * any area lying *outside the corporate limits of any municipal corporation* and includes any areas of open country, unincorporated communities and, with the consent of the governing body thereof by ordinance duly adopted, *any municipality having a population of less than eight thousand five hundred (8,500) persons according to the latest Federal Decennial Census* . . . . (Emphasis added.)

Based on this statutory language the owner maintains that "small cities and open areas in larger cities are included in the definition of rural area under that Act."[1]

¶ 10 He further maintains that his property's rural character is supported by other statutes as well, namely 18 O.S.1991 § 437.28(a) and 68 O.S.1991 § 2888. A rural area, for purposes of the Rural Electric Cooperative Act, 18 O.S.1991 § 437 *et seq.*, is defined as

> * * * *any area not included within the boundaries of any incorporated or unincorporated city,* town or village, having a population in excess of one thousand five hundred (1,500) persons, and any area included within the boundaries of any such city, town, or village as a result of incorporation, annexation, population growth, or otherwise, in which area a cooperative commenced or commences the construction or operation of electric facilities or the furnishing of electric energy prior to such incorporation, annexation, or population growth. (Emphasis added.)

The Ad Valorem Tax Code, 68 O.S.1991 § 2801 *et seq.*, distinguishes between rural and urban homesteads, defining "rural homestead" as "any homestead located outside a city or town or outside any platted subdivision or addition," § 2888(B), while an "urban homestead" means

any homestead located within any city or town whether incorporated or unincorporated, or located within a platted subdivision or addition, whether such subdivision or addition be a part of a city or town. In no case shall an urban homestead exceed in area one (1) acre.

■ ¶ 11 While the owner's property might be characterized as "rural" for some purposes, the cited statutes generally *exclude* from the definition of "rural area" property lying within a city's boundaries. Moreover, as greater focus is placed on the terms of the statute in question, § 42.3, it becomes evident that the owner's property is not rural in character. The statute's language implies that only areas *outside* a city or town are rural, and it excepts from application of § 42.1 only those cities or towns which lack "city or village United States Mail delivery service." We do not believe that the legislature intended to give city residents the opportunity to qualify for the rural-area exception by establishing, on a case-by-case basis, either that their property is characteristically "rural" in size and use or that it has attributes which are not typically urban.

## II.

### THE TERMS OF § 42.1 DO NOT APPLY TO THIS CLAIM

¶ 12 The owner maintains that even if the trial court disallowed recovery under § 42.1 for the wrong reason (because the rural-area exception was thought to apply), the judgment should nonetheless be affirmed, because it is legally correct. The "correct" analysis—urged by the owner—is that the rider's injuries are simply not covered by the statute, since the rider was not attacked by the dog. We agree.

■ ¶ 13 Oklahoma's so-called "dog-bite" statute is in derogation of the common law and must be liberally construed to promote its object. 12 O.S.1991 § 2.[2] However,

---

1. The Rural Water, Sewer, Gas and Solid Waste Management Districts Act, 82 O.S.1991 § 1324.2(5), similarly defines "rural area" as "any area lying outside the corporate limits of any municipal corporation and includes any ar-

eas of open country, unincorporated communities. . . ."

2. The terms of § 2 provide:

"[l]iberal construction is not a device for extending an enactment's ambit beyond its intended scope. Rather, the goal is to achieve an interpretation that harmonizes and coincides with the lawmaker's objective, *i.e.*, to follow the legislature's intent." (Footnotes omitted.) *Tate v. Browning–Ferris, Inc.*, 1992 OK 72, 833 P.2d 1218, 1228.

 ¶ 14 The elements of strict liability under § 42.1 consist of (1) ownership of the dog, (2) lack of provocation, (3) a bite or other injury to the plaintiff by the dog, and (4) the plaintiff's lawful presence at the place where the attack occurs. *Hampton By and Through Hampton v. Hammons*, 1987 OK 77, 743 P.2d 1053, 1058; *Hood v. Hagler*, Okl., 606 P.2d 548, 550 (1979). There is no dispute that the owner owns the dog, that the rider did nothing to provoke the dog, and that the rider was lawfully on the owner's property at the time of the attack. While the parties did dispute whether the dog actually bit the horse, the record is inconclusive in this regard. Even assuming that the dog made contact with the horse, the result in this case would be the same. Statutory liability may not be imposed, because the dog attacked the horse alone.

¶ 15 What is missing from this case is an act of aggression by a dog toward or upon a person. We therefore need not address the issue whether physical contact *between a person and a dog* is required before liability may be imposed under § 42.1.

OPINION BY THE COURT OF CIVIL APPEALS IS VACATED; JUDGMENT FOR THE OWNER IS AFFIRMED.

¶ 16 KAUGER, C.J., and HODGES, LAVENDER, HARGRAVE and OPALA, JJ., concur.

¶ 17 SIMMS, J., concur in judgment.

¶ 18 SUMMERS, V.C.J., and ALMA WILSON and WATT, JJ., concur in part; dissent in part.

The common law, as modified by constitutional and statutory law, judicial decisions and the condition and wants of the people, shall remain in force in aid of the general statutes of Oklahoma; but the rule of the common law,

SUMMERS, Vice Chief Justice, concurring in part and dissenting part.

¶ 1 I concur in affirming the verdict-based Defendant's judgment, but dissent from the court's rationale. I consider the Defendant's agricultural land to be "rural". Lack of U.S. mail service only refers to "cities or towns". Title 4 O.S.1991 § 42.1 (the dog bite statute) therefore is not applicable. 4 O.S.1991 § 42.3.

¶ 2 The trial court correctly submitted the claim to the jury on common law negligence. Finding no reversible error in the record I would affirm.

that statutes in derogation thereof, shall be strictly construed, *shall not be applicable to any general statute of Oklahoma; but all such statutes shall be liberally construed to promote their object.* (Emphasis added.)