2009 OK CIV APP 67

**Angelia EASTIN, individually and as parent and next friend of Sonja Eastin, a minor child, Plaintiff/Appellant,**

**v.**

**Bimal AGGARWAL, Kavita Aggarwal, and Vishal Aggarwal, Defendants/Appellees,**

**and**

**Petra Property Management, LLC, Lakesha Lashon Ferrell, and Eddie Berry, Defendants.**

**No. 106,864.**

Court of Civil Appeals of Oklahoma, Division No. 1.

July 28, 2009.

independent decisions pursuant to those instruc-     tions.

Donald E. Smolen, II, Daniel E. Smolen, Mark L. Miller, Smolen & Smolen, PLLC, Tulsa, OK, for Plaintiff/Appellant.

Matthew B. Wade, Angela D. Ailes & Associates, Oklahoma City, OK, for Defendants/Appellees.

KENNETH L. BUETTNER, Judge.

¶ 1 Plaintiff/Appellant Angelia Eastin, individually and as parent and next friend of Sonja Eastin, a minor child, appeals from summary judgment granted in favor of Defendants/Appellees Bimal Aggarwal, Kavita Aggarwal, and Vishal Aggarwal (collectively, Appellees). After her child was attacked by a pit bull dog, Eastin filed suit against the owners of the dog, and their landlords, Appellees. Eastin claimed Appellees negligently maintained the fence surrounding their rental property and that the dilapidated fence failed to secure the dog and thereby proximately caused the attack and resulting injuries. The material facts are not in dispute and they show Appellees owed no duty to Eastin or her child. Appellees were therefore entitled to judgment as a matter of law.

¶ 2 Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group,* 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different inferences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.,* 1999 OK 73, 988 P.2d 1275.

¶ 3 The record on appeal begins with Eastin's Third Amended Petition, in which she asserted that Bimal and Kavita Aggarwal owned certain property which they had hired Defendant Petra Property Management to maintain. Eastin alleged Appellees knew or should have known that the fence surrounding the property was defective and in disrepair. Eastin alleged that on April 9, 2007, while her child was riding a bike along a public street near the property, a pit bull owned by Defendants Lakesha Ferrell and Eddie Berry (collectively, Tenants) escaped the fence and attacked the child, causing physical and mental injuries. Eastin asserted that before Tenants moved into the rental property, the Aggarwals' son and agent, Vishal Aggarwal, was informed by a neighbor that the fence was in disrepair. Eastin alleged Vishal Aggarwal had negligently and unsuccessfully attempted to repair the fence.

¶ 4 Eastin asserted claims for negligence, strict liability, and negligence *per se* against all Defendants. Eastin contended Appellees owed a duty to visitors at or near their home to use ordinary care to prevent injury, to supervise the dog "they allowed to be kept at their home," and to keep the animal under control so that it could not injure others. Eastin also alleged Appellees had a duty to warn of the danger presented by the dog. Eastin argued Appellees breached those duties by allowing the dog to be on the premises and by allowing the fence to be in a state of disrepair so that the dog was not contained, and that those breaches proximately caused the child's injury.

¶ 5 For her strict liability claim, Eastin alleged Appellees allowed the tenants to keep

a pit bull which was known or should have been known to have a dangerous propensity to attack without provocation, and that in doing so they violated 4 O.S.2001 § 42.1.[1] In her negligence *per se* claim, Eastin noted that Appellees had a duty to comply with state statutes and municipal ordinances, and she contended Appellees violated City of Tulsa Revised Ordinances Title 2, Ch. 1, § 100. Eastin argued that Appellees' "wilful, wanton, & reckless disregard for said ordinances allowed the animal in question to push through and break out of the defective fencing" before attacking the child.

¶ 6 In their Answers, Appellees denied Eastin's claims. As affirmative defenses, they asserted failure to state a claim, lack of duty to Eastin with respect to the dog at issue, provocation, assumption of risk, and that the injuries were caused by a third party over whom Appellees had no control.

¶ 7 Bimal and Kavita Aggarwal filed their Motion for Summary Judgment October 17, 2007. Vishal Aggarwal filed his Motion for Summary Judgment October 9, 2008.[2] Appellees asserted that before the attack on Eastin's child, Appellees were not aware of the existence of the dog, they had not authorized their tenants to have a dog, and they did not maintain, control, harbor, or assert ownership of the dog. Appellees contended therefore that Eastin's claims failed as a matter of law. The Motion for Summary Judgment included a statement of 11 undisputed material facts: 1) Appellees were the owners of a single family residence at 11819 E. 62nd Street in Tulsa; 2) on October 23, 2006, Appellees leased the home to Ferrell; 3) the lease specifically barred tenants from keeping or harboring pets of any kind on the premises; 4) prior to the April 9, 2007 dog attack, Appellees had no knowledge of any

dog being harbored by the tenants; 5) as of April 9, 2007, Bimal and Kavita Aggarwal were residing primarily outside of Oklahoma; 6) Bimal and Kavita Aggarwal had assigned power of attorney to Vishal Aggarwal; 7) at any time prior to April 9, 2007, Appellees had not cared for, maintained, kept, harbored, possessed, controlled, or had custody of any vicious dog at the residential rental property; 8) Eastin testified that prior to the April 9, 2007 incident, she was not aware of any incidents in which the dog in question showed any signs of aggressiveness to another human being or animal; 9) Eastin was not aware of any reports or complaints made to any City of Tulsa authority, police agency, or dog pound regarding the dog's behavior prior to April 9, 2007; 10) Eastin was not aware of any facts that would suggest Appellees were aware of the existence of the dog in question prior to the incident on April 9, 2007; and 11) Eastin testified that other than the occupants of the rental property, she was not aware of anyone else that had cared for, maintained, kept, harbored, possessed, controlled, or had custody of the dog in question.

¶ 8 Eastin filed her Response to the Motion for Summary Judgment October 15, 2008. Eastin did not dispute Appellees' statements of fact 1 and 2. As to Appellees' third statement of fact, Eastin contended that the lease stated, "Tenant shall not keep pets of any kind ... on the Premises without prior permission from the Owner" and that "if, after move-in, a pet is acquired without written permission of Owner/Owner's Broker an eviction notice will be issued." Eastin disputed Appellees' statement of fact 4 by quoting the following portion of the deposition of Bimal Aggarwal:

Q: So was it your position that it was okay for tenants to have pets in your homes?

1. That statute provides:
   Personal injury by dog—Liability of owner
   The owner or owners of any dog shall be liable for damages to the full amount of any damages sustained when his dog, without provocation, bites or injures any person while such person is in or on a place where he has a lawful right to be.
   Eastin abandoned her claims for negligence *per se* and strict liability in her summary judgment response. The record shows undisputedly that Appellees were not owners of the dog, which is

an essential element of a claim for strict liability. The Oklahoma Supreme Court has held that the elements of strict liability under the dog bite statute consist of (1) ownership of dog, (2) lack of provocation, (3) bite or other injury to plaintiff by dog, and (4) plaintiff's lawful presence at place where attack occurs. *Nickell v. Sumner*, 1997 OK 101, ¶ 14, 943 P.2d 625.

2. Vishal adopted his parents' Motion for Summary Judgment.

A: You see, pets can be kept anywhere in the world in any house. Everyone keeps it (*sic*).

Q: Everybody keeps pets?

A: Uh-huh.

Q: And you didn't have a problem with anyone keeping pets in a house, am I right?

A: Yes.

Eastin failed to note the context of that testimony.[3] The evidentiary material fails to create a question whether Bimal knew the tenants had a dog in the home prior to the attack or had given any consent to the tenants to have a dog. Eastin has not presented a dispute as to Appellees' statement of fact 4.

¶ 9 Eastin also disputed Appellees' statement of fact 5. Eastin asserted that Bimal and Kavita Aggarwal "were present in the United States and even met Lakesha Ferrell prior to the April 2007" dog attack. Again, the deposition testimony on which Eastin relied does not support her assertion. Eastin quoted the following from Ferrell's deposition:

Q: So do you know who owns the property at 11819 East 62nd St.?

A: I know the Aggarwals. I met them just one time.

Nothing in this statement suggests that Ferrell met the Aggarwals prior to the dog attack, nor does it create a question of fact whether the Aggarwals were residing primarily outside Oklahoma at the time of the attack. More importantly, this fact is not material to Eastin's case both because the Aggarwals had hired Petra to manage the property and had assigned power of attorney to Vishal Aggarwal, but also because the record includes no evidence suggesting Appellees knew of the existence of the dog before the attack. Eastin did not respond to Appellees' statements of fact 6 and 7. Eastin admitted Appellees' statement of fact 8, but she asserted the dog "exhibited numerous acts of aggression and violence." Eastin cited the deposition testimony of Linda Johnson, a neighbor who lived next to the rental house owned by Appellees. Johnson specifically testified that prior to April 9, 2007, she had not seen the dog attack anyone. Nor had she ever witnessed the dog act aggressively or attack any person or animal in the neighborhood prior to April 9, 2007. She testified that when the dog was in Tenants' back yard, it would bark aggressively at the fence while Johnson's dogs barked on her side of the fence. Johnson testified she believed pit bulls were dangerous and she worried that when the children played with the dog in the back yard that it was in "kind of an attack position." She explained she called

---

3. Immediately preceding this exchange, Bimal Aggarwal explained he did not know what tasks Petra performed because his son Vishal handled such matters. In this exchange, Bimal Aggarwal was questioned about an email he sent to Petra Management *after* the dog attack.:

Q: Okay. Also in the same e-mail you set forth in the last, I think it is the last sentence of that same large paragraph: In order for them to keep their pets, they will need to affidavit (*sic*) that list all of their pets and that they have no knowledge of the aggressiveness of their pet and they assume all the responsibility of their pet's action. Is that what that part of the e-mail says?

A: Yeah. Yeah.

Q: So was it your position that it was okay for tenants to have pets in their homes?

A: You see, pets can be kept anywhere in the world in any house. Everyone keeps it (sic).

Q: Everybody keeps pets?

A: Uh-huh.

Q: And you didn't have a problem with anyone keeping pets in a house, am I right?

A: Yes.

The e-mail, from Bimal to Mike at Petra, was attached as Exhibit J to Eastin's Response to the summary judgment motion. It is dated May 19, 2007. It provides:

Dear Mike,

My son Vishal informed me that the tenent (*sic*) in one of my properties is keeping a dog without approval. And that dog has harmed a young girl and parents of this girl are persueing (*sic*) some legal action.

Please serve a notice of termination of lease lease (*sic*) to the tenant as they voilated (*sic*) the terms of the lease and they can only remain in my property if they remove the dog immidiately (*sic*).

Please check to ensure that non (*sic*) of the other tenants are keeping any dog or other pets without permission. As was instructed to you before that there will be extra rent for tenants with pets. In order for them to keep their pets they will need to affedevit (*sic*) that list all of their pets and that they have no knowlegde (*sic*) of the aggressiveness of their pet and they assume all the responsibility of their pets (*sic*) action. . . .

out to the children not to make the dog mad. Johnson's concern about pit bulls generally is not evidence that the dog exhibited numerous acts of aggression and violence before the injury at issue here.

¶ 10 Eastin admitted Appellees' statement of fact 9, but she cited testimony that animal control had been called to the house three days before the attack because the dog "had managed to rub his neck raw by tugging, lunging, and pulling on his spiked choke chain. . . ." The testimony cited by Eastin did not include a statement that the dog had pulled on the chain; instead it indicated that neighbors called animal control because the dog was chained up and "he had deterioration up on his neck" because the chain was too tight. Finally, Eastin admitted Appellees' statement of fact 10, but she repeated her assertion noted above, that "Bimal Aggarwal assumed there was a pet residing at the property in question." As explained above, the cited testimony does not support a dispute of fact on that claim. Eastin did not respond to Appellees' statement of fact 11. Eastin then listed 21 additional facts she claimed were disputed and material which precluded summary judgment in favor of Appellees.[4]

¶ 11 Eastin conceded the Oklahoma rule that an absentee landlord cannot be held liable as the keeper or harborer of his tenant's dog. See *Hampton v. Hammons*, 1987 OK 77, 743 P.2d 1053; *Bishop v. Carroll*, 1994 OK CIV APP 37, 872 P.2d 407; *Robison v. Stokes*, 1994 OK CIV APP 85, 882 P.2d 1105. Nevertheless, Eastin asserted that even if Appellees were not liable as landlords or for "their failure to evict a tenant with a dog known to be dangerous,"[5] they still could be liable.

¶ 12 Eastin charged that Appellees could be liable because, according to Eastin, they undertook repairs of the fence and did so negligently. Eastin cited the following language from the Restatement (Second) Property:

a lessor of land who, by purporting to make repairs on the land while it is in the possession of his lessee, or by the negligent manner in which he makes such repairs has, as the lessee neither knows nor should know, made the land more dangerous for use or given in a deceptive appearance of safety, is subject to liability for physical harm caused by the condition to

---

4. Eastin alleged the following "disputed and material" facts precluded summary judgment: 1) Bimal and Kavita Aggarwal purchased the property September 27, 2006; 2) they were the legal owners and contracted with Petra Property Management prior to the dog attack; 3) they leased the property, through Petra, to Ferrell November 1, 2006; 4) at the time Appellees purchased the property and leased it to Ferrell, the chain link fence on the east side of the house was in a state of disrepair, bent from dogs jumping over it; 5) Vishal Aggarwal, attempted to repair the fence on the east side of the property (Vishal testified he did not repair the fence); 6) Vishal repaired the fence by pulling the fence off the ground and securing it with wire or string; 7) it was well known that dogs had resided in the backyard of the house before Appellees purchased the home; 8) it was well known the purpose of the fence was to contain animals and keep them from straying; 9) within a week of Ferrell moving into the house, the pit bull dog was living there; 10) the pit bull is a vicious breed; 11) Ferrell was not evicted after Appellees learned the dog was living in the house (the testimony cited shows that Vishal asked Petra to evict Ferrell after the dog attack and he did not know that Petra had not evicted her until some months later); 12) Bimal Aggarwal assumed a dog was being kept at the house; 13) the pit bull was kept in the back yard and was visible to passersby; 14) the dog showed signs of aggressive behavior on numerous occasions; 15) animal control was called to the home shortly before the attack because of the dog's chain; 16) children in the neighborhood often played in yards of the neighboring houses (Ferrell testified the children sometimes played in her back yard with the pit bull); 17) Eastin's child played at Ferrell's home on numerous occasions; 18) on April 7, 2007, Eastin's child was attacked by the pit bull in Ferrell's front yard; 19) the pit bull was able to push over the chain link fence to get to the front yard to attack Eastin's child; 20) Eastin's child sustained significant physical and mental injuries in the attack; 21) Appellees had asserted in their cross-claim against Petra that their contract with Petra gave Petra a duty to manage the property and that if the injuries were the result of negligence, it was Petra's negligence, but Appellees' duty was non-delegable.

5. We note the evidence in the record on appeal shows that pit bulls may be dangerous, but there is nothing in the record to create a question of fact that the dog at issue was known to be dangerous before the attack on Eastin's child, or that Appellees had notice of the dog's presence before the attack.

the lessee or to others upon the land with the consent of the lessee or sublessee. Restatement (Second) of Property, Land. & Ten. § 17.7 (1977). The undisputed facts show this provision does not apply. First, there is no authority that an owner of real property has a duty to fence it. Secondly, the only testimony about the fence being repaired was given by the neighbor, Johnson, who was unclear whether it was Appellees or the previous owner who made the repairs.[6] And Ferrell testified the dog occasionally stepped on and over the fence to go into the front yard; there is no dispute that Ferrell was aware that the fence would not contain the dog. And there is no evidence supporting an inference that if Vishal Aggarwal repaired the fence, he did so intending to contain a dog.

¶ 13 "Where the premises provided are inadequately secured due to ineffective or defective materials, a duty on the part of the landlord to provide repairs or modifications would arise *upon notification of the defect by the tenant.* This duty arises from the landlord-tenant contract and from the implication that the landlord is to provide services under the contract in a diligent manner." *Lay v. Dworman,* 1986 OK 85, 732 P.2d 455, 458 (emphasis added). In *Dworman,* the tenant sued the landlord for negligence after she was raped in her apartment. The court held the landlord owed a duty to the tenant pursuant to the lease contract and the warranty of habitability, rather than to a third party, to provide a lock in good repair. Eastin has failed to present authority that a landlord has any duty to provide a fence around the rented premises to secure third parties from a dangerous dog, particularly in a case such as this where the lease contract did not allow the dog absent permission. The record contains no evidence suggesting that the tenants sought permission to keep the dog from Appellees or that Appellees had notice of the presence of the dog until the attack occurred.

¶ 14 Here there is no evidence creating a dispute of fact whether Vishal undertook the repair of the fence with the goal of protecting third parties from his tenant's dog. The undisputed evidence is that the tenant and the neighbor knew the dog was able to lean against the fence and walk over it. The evidence also showed that the tenant allowed the children to play with the dog in the backyard, and that she sometimes allowed the dog to go out into the front yard via the home's front door. Accordingly, there is no evidence in the record supporting an inference that the fence was intended to offer any protection to the tenants or to third parties. The undisputed evidence shows Appellees owed no duty to protect or warn Eastin under the facts of this case. Accordingly, summary judgment in favor of Appellees is AFFIRMED.

BELL, P.J., and ADAMS, J., concur.

6. Johnson testified she told Berry "to keep the dog pinned up in the back yard. The fence was in bad condition, the fence was down, and I had told him and told him to fix the fence, keep the dog in the back yard." Johnson testified also that

... Before (Tenants) moved in, that fence was broken down where it was on the ground. And the owner, the people who bought that house to lease out, I pointed that out to him and all they did was raise it-just lift it up and left it there. And I—when the dog started getting out, that's what caused the problems first. The dog started getting out of the back yard and it scared me.

Q: Okay. Let me stop you for just one minute. When you say the owners, do you know who they are?
A: No, I don't. It was prior-as I understand it, it was prior to these owners now. It was the man that....
And I talked to the man who said he owned the house and I asked him, you know, about fixing that fence. .... And all that he did with the fence-I didn't see him do it, but I looked at it after they fixed it, so to speak. All they did was lift it straight up and kind of brace it up a little bit and left it there.