OSCN Found Document:WISHON v. HAMMOND

 

 
 

 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only

 
 
 

 
 WISHON v. HAMMOND
2023 OK CIV APP 36
Case Number: 117997
Decided: 10/26/2022
Mandate Issued: 10/19/2023
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV

Cite as: 2023 OK CIV APP 36, __ P.3d __

 

TRELA WISHON, Plaintiff/Appellant,
v.
JAMES HAMMOND and RITA HAMMOND, Defendants/Appellees,
and
FOREST HAMMOND, RONALD HAMMOND and DALTON GRAVETT, Defendants.

APPEAL FROM THE DISTRICT COURT OF

OKLAHOMA COUNTY, OKLAHOMA

HONORABLE RICHARD C. OGDEN, TRIAL JUDGE

AFFIRMED IN PART, REVERSED IN PART, AND 
REMANDED FOR FURTHER PROCEEDINGS

Dakota C. Low, MILLER DOLLARHIDE, P.C., Oklahoma City, Oklahoma, for Plaintiff/Appellant

Shanda McKenney, ANGELA D. AILLES & ASSOCIATES, Oklahoma City, Oklahoma, for Defendants/Appellees

JOHN F. FISCHER, CHIEF JUDGE:

¶1 Trela Wishon appeals the judgment in favor of James and Rita Hammond (collectively, the Hammonds). Wishon and her dog were attacked and injured by a dog owned by co-defendant Forest Hammond. Wishon sued the Hammonds alleging that, as owners of the real property where Forest Hammond lived and kept the dog, they were liable for harboring a dangerous animal in violation of state and municipal law. Wishon further alleged that the Hammonds were negligent as owners of the property where the dangerous animal was maintained by failing to require that the dog be contained in a safe manner. The Hammonds filed a motion for summary judgment arguing that they did not violate state and municipal law because they did not own the dog. They further argued they were not negligent because they did not know that Forest Hammond kept the animal that attacked Wishon on their property. Wishon's appeal of the judgment granting the Hammonds' motion has been assigned to the accelerated docket pursuant to Oklahoma Supreme Court Rule 1.36, 12 O.S. Supp. 2013, ch. 15, app. 1, and the matter stands submitted without appellate briefing.

¶2 The issue in this case is whether a landlord has a duty to those who are not on the property but are injured as the result of activities conducted on the property owner's premises by the property owner's tenant. We hold, in the circumstances of this case, that the law imposes that duty on a landlord. Nonetheless, we affirm the judgment in favor of the Hammonds with respect to Wishon's claim that the Hammonds violated state and municipal law. They were not owners of the dog that attacked Wishon for purposes of those laws. However, we reverse the judgment with respect to Wishon's common law negligence claim that the Hammonds are liable for her injuries as owners of the property where the dog was kept. Disputed issues of fact concerning whether the Hammonds breached their duty to Wishon preclude summary judgment as to this theory of liability.

BACKGROUND

¶3 James and Rita Hammond own property on Drew Drive within the municipal boundary of Oklahoma City. In the fall of 2014, they permitted James' brother, Ronald, to live on that property. They did not have a written lease agreement but their understanding was that Ronald would "pay whatever he could" in rent, usually $500 per month, when he was able to do so. At some point, with the Hammonds' knowledge and consent, Ronald permitted his grandson, Forest Hammond, to live on the property with him.

¶4 Approximately two years after Ronald moved onto the Hammonds' Drew Drive property, and while Forest was living there, Wishon was walking on the road in front of the property when she and her dog were attacked and bitten by a dog owned by Forest. The injuries were severe and required medical attention. Wishon sued Ronald, Forest, James, Rita and another of Ronald's grandsons, Dalton Gravett. Wishon alleged that the defendants were liable pursuant to Oklahoma and Oklahoma City law as owners of the dog that caused her injuries, and were negligent in failing to properly house the animal and in failing to warn her that the dangerous animal was on the premises. There is some indication that Wishon's suit against Ronald, Forest and Dalton may have been resolved in her favor, and Wishon's claims against those defendants are not at issue in this appeal.[1]

 

¶5 This appeal involves Wishon's claim against James and Rita Hammond as owners of the Drew Drive property. The Hammonds argued in their motion for summary judgment that they could not be held liable for Wishon's injuries because: (1) they did not own the dog that attacked Wishon and therefore could not have violated state or municipal law; and (2) they did not owe Wishon a duty of care under common law negligence because they were unaware of the dog's existence.[2] Wishon appeals the judgment granting the Hammonds' motion.

STANDARD OF REVIEW

¶6 Title 12 O.S.2011 § 2056 governs the procedure for summary judgment in this case. A motion for summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Id. Like the trial court, an appellate court "will examine the pleadings and evidentiary materials submitted by the parties to determine if there is a genuine issue of material fact." Carmichael v. Beller, 1996 OK 48, ¶ 2, 914 P.2d 1051. The de novo standard controls an appellate court's review of a district court order granting summary judgment. Id. "De novo review involves a plenary, independent, and non-deferential examination of the trial court's rulings of law." Neil Acquisition, L.L.C. v. Wingrod Inv. Corp., 1996 OK 125, n.1, 932 P.2d 1100.

ANALYSIS

¶7 As evident from the summary judgment briefing, Wishon based her claim against the Hammonds on common law negligence. She alleged that the Hammonds owed her a duty as owners of the property where the dog was housed and as landlords of the owner of the dog that caused her injuries. In addition, she asserted a claim based on negligence per se, contending that the Hammonds were liable for violating Oklahoma and Oklahoma City laws prohibiting them from harboring the dangerous dog that caused her injuries.

I. Material Facts

A. Undisputed Facts

1. James and Rita Hammond, who live in Edmond, Oklahoma, own the Drew Drive property involved in this suit. They bought the property in approximately 2010. The property is located within the city limits of Oklahoma City, Oklahoma, near Luther, Oklahoma, and is approximately five acres in size.

2. Neighbors on either side of this property erected fences, but the property is not fenced along the front of the Hammonds' property facing Drew Drive.

3. In the fall of 2014, the Hammonds leased the property to James' brother, Ronald. No lease term was agreed to and Ronald was to pay on a month-to-month basis.

4. The lease was not in writing and did not prevent Ronald from keeping dogs on the property.

5. The Hammonds own three other rental properties. Each of the tenants in those properties has signed a written lease. Each of those three leases prohibits the tenant from keeping pets, including dogs, on the Hammonds' property.

6. The Hammonds receive the tax notices for the Drew Drive property or notices from Oklahoma City regarding that property at their Edmond address.

7. With the knowledge and consent of the Hammonds, Ronald permitted his grandson Forest to live with him on this property. Forest estimated that he moved onto the Drew Drive property in approximately September of 2015. (An April 13, 2015 loose dog report suggests that Forest may have moved in earlier. See infra B. Unresolved Issues of Fact.)

8. The Hammonds also knew that Forest kept a male Pit Bull/Mastiff-mix dog on the property, Cain, and authorized Forest to do so. Cain was a littermate of a dog owned by the Hammonds.

9. When Forest moved onto the property, the Hammonds provided a 10-foot by 20-foot chain link kennel for the purpose of keeping Forest's dog contained.[3] Forest kept Cain in the kennel for "a little bit," but ultimately decided it was too small for the dog. Then he kept Cain on a chain in the yard.

10. At some point, Forest acquired ownership of a female brindle Pit Bull/Mastiff-mix dog he named "Rousey." This dog was a sibling of Cain and the dog owned by the Hammonds. Forest also kept Rousey on the Hammonds' Drew Drive property. He initially kept Rousey in the kennel, but she was "an escape artist" and would dig out of the kennel. The area where the kennel was located was sandy soil and easy to dig.

11. On September 27, 2016, while Wishon was walking with her border collie on the road in front of the Hammonds' Drew Drive property, Wishon and her dog were attacked and injured by Rousey. Wishon and her dog required medical attention but both recovered from their injuries.

12. Neighbors living across the street from the Hammonds' property, the Holshousers, saw the attack as it occurred; they were able to intervene, stop the attack and take Wishon and her dog for medical treatment.[4]

13. When Oklahoma City animal control officers arrived, Rousey "was still loose," but "ran off into the woods." The officers were able to interview Forest.

14. The animal control officers issued Forest a dangerous dog citation and impounded and later euthanized Rousey, after she was identified by Wishon as the dog that attacked her.

15. A few days after the attack on Wishon, the Hammonds received a letter at their Edmond address regarding the incident, stating that "a dog had gotten loose and bitten someone."

B. Unresolved Issues of Fact

¶8 If any one of the facts in the following section is material, summary judgment is precluded. "Summary judgment claims turn on the law because there is no material factual dispute." Coates v. Progressive Direct Ins. Co., 2022 OK 45, ¶ 7, 512 P.3d 345. Summary judgment is not appropriate even where the facts are not disputed "if reasonable minds could reach different conclusions from the undisputed material facts." Fargo v. Hays-Kuehn, 2015 OK 56, ¶ 12, 352 P.3d 1223.

¶9 The following issues of fact remain disputed. The Hammonds contended that, although they knew that Forest was keeping one male dog on the property, they did not know that he owned Rousey or kept her on the property. The Hammonds supported their contention with citations to their own deposition testimony and Forest's deposition testimony. Wishon disputed the Hammonds' assertion that they did not know about Rousey. Wishon's citations to the record to support her contention do not directly contradict the deposition testimony relied on by the Hammonds. However, Wishon's evidentiary materials do support an inference that the Hammonds were aware that Forest kept more than one dog on the property. Her evidentiary materials show:

1. On April 13, 2015, seventeen months prior to the attack on Wishon, the Oklahoma City Action Center received a complaint about a loose dog from a "Web request." The Hammonds' Drew Drive address was listed as the "Service Address." The City responded noting that a "warning notice" was sent to the owner of a dog advising the owner "that they must keep their dog confined at all times." The Hammonds deny receiving this notice but admit receiving other notices regarding the Drew Drive property.

2. In April of 2011, and in April and May of 2012, Rita Hammond was sent an Incident Detail Report by Oklahoma City Animal Control regarding a very aggressive Pit Bull that was loose and which she, the owner, refused to keep confined even though there were "lots of kids" in the area and the dog reportedly chased and snapped at the children. After the April 2011 incident, the Hammonds were cited for failure to vaccinate two dogs. All three of these incident reports were sent to and received by the Hammonds at their Edmond address.

3. At the time of the attack on Wishon, four Mastiff-type dogs were housed on the Hammonds' Drew Drive property according to the Oklahoma City Animal Control officers investigating the attack on Wishon.

4. According to the Holshousers, neighbors who lived across the street from the Hammonds' Drew Drive property, the dog that attacked Wishon, "has never been chained up or put in a dog pen despite our attempts to tell the dog owner or anyone in charge of the property to do so."

5. The night before Rousey attacked Wishon, Mr. Holshouser stated that he was walking his dog when he was threatened "by the same vicious pit bull dog that is kept on James Hammonds' property." This continued until "someone" from the Drew Drive property called the dog back.

II. Negligence Per Se

¶10 Wishon's negligence per se theory invokes 4 O.S.2011 § 42.1: "The owner or owners of any dog shall be liable for damages to the full amount of any damages sustained when his dog, without provocation, bites or injures any person while such person is in or on a place where he has a lawful right to be." Violation of the statute requires proof that the defendant owned the dog. See Hood v. Hagler, 1979 OK 163, ¶ 9, 606 P.2d 548. The Hammonds argue that they did not own the dog that attacked Wishon and, therefore, did not violate state law and cannot be held strictly liable for Wishon's injuries. It is undisputed that the dog that attacked Wishon was not owned by the Hammonds.

¶11 However, any municipal code definition of "owner" in a similar animal control ordinance that is not inconsistent with section 42.1 "operates to extend" section 42.1 to include any person covered by the ordinance. Hampton v. Hammons, 1987 OK 77, ¶ 27, 743 P.2d 1053. The version of the Oklahoma City Municipal Code in effect when this attack occurred provided:

It shall be unlawful for any person to allow any dog owned, harbored, possessed or maintained by him within the City to exhibit menacing behavior.

OKC Mun. Code Ch. 8, Art. III, § 8-132(a). "Menacing behavior" as used in Oklahoma City's animal control ordinances means "a dog, while not confined to the property of the owner of the animal . . . causes a reasonable person to believe that an unprovoked attack on a person or on a domestic animal is imminent." Id. § 8-132(b). A dangerous animal is defined as one that "inflicts an injury upon a human as a result of an unprovoked attack regardless if the dangerous animal is on or off the property on which it is harbored . . . or . . . that, when unprovoked, either kills, bites or attacks another animal off the property on which the dangerous animal is harbored." Id. § 8-131(d). Like the municipal ordinance in Hampton, Oklahoma City's ordinance is within its police power to enact, it addresses a matter of local concern -- dog attacks -- and is not irreconcilable with 4 O.S.2011 § 42.1. Consequently, the ordinance and the statute "are to be construed cumulatively . . . ." Hampton v. Hammons, 1987 OK 77, ¶ 27. The dog that attacked Wishon qualifies as a "dangerous" animal and, prior to that attack, had exhibited "menacing behavior."

¶12 "Owner" is defined in the Oklahoma City Municipal Code as "any person, firm, business, organization, or corporation owning, possessing, harboring, or keeping any animal, or having an interest in or control of an animal . . . ." OKC Mun. Code Ch. 8, Art. III, § 8-131(e). Where the municipal ordinance defines "owner" more broadly than the state statute, we examine the definition in the ordinance to determine if the defendant is subject to the statute. Hampton, 1987 OK 77, ¶¶ 25-27. See also Weller v. Wilson, No. 118,897 (Okla. Ct. Civ. App. December 22, 2020).

¶13 Based on the undisputed facts in this case, none of the terms used in the City's ordinance to define "owner" apply to the Hammonds, with the possible exception of "harboring." Harboring is not further defined in the ordinance; therefore, its meaning must be interpreted using the basic rules of statutory construction. Wylie v. Chesser, 2007 OK 81, ¶ 4, 173 P.3d 64. In the context of a criminal provision like the City's ordinance, the term "harboring" connotes clandestine or improper behavior to conceal something, in this case, a dangerous dog. See Black's Law Dictionary 646 (5th ed. 1979). Used in that sense, this record fails to establish the clandestine intent on the part of the Hammonds to "harbor" the dog that attacked Wishon. Consequently, we hold that the Hammonds were not the "owners" of that dog as defined in the ordinance and, therefore, were not "owners" for purposes of 4 O.S.2011 § 42.1.

¶14 That does not resolve Wishon's argument that negligence per se applies. "It is undisputed in Oklahoma that violation of a municipal ordinance constitutes negligence per se if the other elements of actionable negligence are present." Hampton v. Hammons, 1987 OK 77, ¶ 12, 743 P.2d 1053. On July 6, 2017, less than ten months after this attack, Oklahoma City's animal control ordinances were amended. See OKC Mun. Ord. No. 25674 § 4, 7-5-17. Section 8-132 of the municipal code now makes it unlawful to own a "dangerous" animal in addition to one that exhibits menacing behavior, and violation of the ordinance is extended to landlords.

No person who has an ownership interest in real property shall permit another person to harbor, possess, or maintain on that property and within the City limits any animal that is dangerous or menacing as defined in this chapter, unless the Municipal Court orders the animal returned to the person owning, harboring, possessing or maintaining the animal under restrictions designated by the Municipal Court.

OKC Mun. Code Ch. 8, Art. III, § 8-132(a). It is clear that the Hammonds had "an ownership interest in real property [where they permitted] another person to harbor, possess, or maintain on that property and within the City limits any animal that is dangerous or menacing . . . ." Id. But, no similar "ownership interest" provision appeared in the version of the ordinance in effect when Wishon was attacked.

¶15 Whether the "ownership interest" provision applies retroactively and would include the Hammonds depends on the intent of the municipal body that adopted the amendment. "The language of an ordinance, when given its plain and ordinary meaning, is the yardstick for ascertainment of the [drafters'] intent." Tinker Inv. & Mortg. Corp. v. City of Midwest City, 1994 OK 41, ¶ 13, 873 P.2d 1029 (footnote omitted). In addition, by amending a law a legislative body may have intended to change existing law or clarify existing but uncertain law. See Blitz U.S.A., Inc. v. Okla. Tax Comm'n, 2003 OK 50, ¶ 19, 75 P.3d 883; Magnolia Pipe Line Co. v. Okla. Tax Comm'n, 1946 OK 113, ¶ 11, 167 P.2d 884. "A clarification is attempted only where there is some doubt as to a law's meaning or effect." Blitz, 2003 OK 50, ¶ 19.

¶16 There is nothing in this record to suggest that the meaning of the pre-amendment version of the ordinance was in doubt. Hampton v. Hammons, which extended 4 O.S.2011 § 42.1 to the owners of property where a dangerous dog owned by another was kept, had been decided twenty years earlier. Consequently, we conclude that the extension of the ordinance to anyone with an "ownership interest" in property where a dangerous animal is kept was intended to change existing law, and extend liability to a new group of people potentially liable for injuries caused by a dangerous animal.

¶17 Therefore, when 4 O.S.2011 § 42.1 is construed with the pre-2017 version of the Oklahoma City Municipal Code, the Hammonds are not covered by the ordinance and, therefore, are not "owners" of the dog that attacked Wishon for purposes of section 42.1. With respect to this issue, the district court's judgment in favor of the Hammonds is affirmed.

III. Common Law Negligence

¶18 Wishon's common law negligence theory of recovery is not determined by whether the Hammonds owned or harbored the dog that attacked her. It is determined, in the first instance, by whether the Hammonds, as owners of the property where Forest kept his dogs, owed Wishon a duty to protect her from the dog attack. "The threshold question in any suit based on negligence is whether defendant had a duty to the particular plaintiff alleged to have been harmed." Haas v. Firestone Tire & Rubber Co., 1976 OK 178, ¶ 14, 563 P.2d 620. Whether the defendant owes a duty to a particular plaintiff is a question of law. See Harwood v. Ardagh Grp., 2022 OK 51, ¶ 27, ___ P.3d ___ (citing Wofford v. Eastern State Hosp., 1990 OK 77, ¶ 8, 795 P.2d 516). The determination that a defendant owes a duty is "an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." Wofford, 1990 OK 77, ¶ 10 (quoting William L. Prosser, Handbook of the Law of Torts 332-333 (West Publ'g Co., 3rd ed. 1964)). But, the existence of a duty is not enough. The "duty must be owed by the defendant to the particular plaintiff bringing the action . . . ." Hensley v. State Farm Fire and Cas. Co., 2017 OK 57, ¶ 16, 398 P.3d 11.

¶19 The Hammonds' general duty as landowners to protect another from harm is well settled. "The law casts on the [property owner] the duty to exercise reasonable care to keep the premises in a reasonably safe condition . . . ." Rogers v. Hennessee, 1979 OK 138, ¶ 3, 602 P.2d 1033. Generally, a landlord's premises liability concerns injuries occurring on the property. See, e.g., Wood v. Mercedes-Benz of Okla. City, 2014 OK 68, ¶ 5, 336 P.3d 457. However, it is also well settled that a landowner's liability for injuries to others does not end at the property boundary. See Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty., 2002 OK 76, ¶ 11, 60 P.3d 497 (holding that a utility company owes duty of care to motorists traveling on roads adjoining its easement). This case involves the latter -- injuries occurring off the property.

¶20 If the Hammonds had lived on the Drew Drive property, they would be liable for Wishon's injuries because Hampton v. Hammons, 1987 OK 77, 743 P.2d 1053, establishes that their ownership of the dog, or lack thereof as in this case, is not determinative. Id. ¶¶ 27-28. And, their liability is not resolved by the fact that the attack did not take place on their property. Iglehart, 2002 OK 76, ¶ 11. To the extent the common law was unsettled in this area, Oklahoma has codified this principle with respect to injuries from dog attacks -- liability extends to any injuries suffered by "any person while such person is in or on a place where he has a lawful right to be." 4 O.S.2011 § 42.1. Wishon had a lawful right to be on the road in front of the Hammonds' Drew Drive property.

¶21 However, the Hammonds did not live on the Drew Drive property but leased it to a relative. And, we have held that their liability, if any, for injuries occurring off their property cannot be based on 4 O.S.2011 § 42.1. Consequently, Wishon's common law negligence claim requires a different analysis.

¶22 Generally, a landlord is not liable for the torts of a tenant resulting from activity conducted on the landlord's property. See Crane v. Sears, 1934 OK 375, ¶ 20, 35 P.2d 916. See also Stewart ex rel. Stewart v. Aldrich, 2002 ME 16, 788 A.2d 603 (holding that a "landlord is generally not liable for a dangerous condition that comes into being after the lessee takes exclusive possession and control of the premises"). This is so because "the law of property regards the lease as equivalent to a sale of the land for the term of the lease." Restatement (Second) of Torts § 356, cmt. a (Am. L. Inst. 1965)(explaining "the general rule that a lessor is not liable to the lessee, or to others on the land, for injuries occurring after the lessee has taken possession . . . ."). Id.[5] In the ordinary case, a lease "involves an interest in the land passed to the tenant and a possession exclusive even of the landlord . . . ." Tips v. United States, 70 F.2d 525, 526 (5th Cir. 1934).

¶23 Oklahoma property law is no different. "At the commencement of the term a landlord shall deliver full possession of the premises to the tenant . . . ." 41 O.S.2011 § 117(A). See also Ahlstrom v. Campbell Real Estate, 2020 OK CIV APP 70, ¶ 21, 482 P.3d 17 ("Section 117(A) of the [Oklahoma Residential Landlord Tenant Act] sets forth a landlord's duty to deliver possession of the premises at the commencement of the lease term."). The Residential Landlord Tenant Act governs the lease between the Hammonds and Ronald. See 41 O.S.2011 § 103.

¶24 Nonetheless, a landlord's duty to protect others from harm is not abrogated by a lease. For example, a landowner can be held liable for injuries caused to persons on the land by a dangerous condition that the landowner knows of but does not disclose to the lessee even though the injury occurs after full possession of the leased premises is transferred. See, e.g., Restatement (Second) of Torts § 358.

¶25 Another exception to the general rule that a landowner is not generally liable for the torts of a tenant is when the landlord knows about the tenant's activity, the activity creates an unreasonable risk of harm, the landlord has the ability to control that activity and consents to the tenant's activity which caused the injury. That exception is stated in Restatement (Second) of Torts § 379A:

A lessor of land is subject to liability for physical harm to persons outside of the land caused by activities of the lessee or others on the land after the lessor transfers possession if, but only if,
(a) the lessor at the time of the lease consented to such activity or knew that it would be carried on, and
(b) the lessor knew or had reason to know that it would unavoidably involve such an unreasonable risk, or that special precautions necessary to safety would not be taken.

No Oklahoma case has specifically addressed this exception, but cases from other jurisdictions hold that the landlord's potential liability for the tortious conduct of a tenant also extends to those not on the landlord's property. See e.g., Bowers v. Wurzburg, 528 S.E.2d 475, 480-85 (W.Va. 1999)(landlord potentially liable for damage to adjacent property caused by exploding gasoline that leaked from tenant's underground storage facility); Easson v. Wagner, 501 N.W.2d 348, 351 (S.D. 1993)(landlord potentially liable for damage to adjoining property caused by flying rocks from tenant's mining and blasting activities). As noted in Bowers, "[t]he most common application of the restatement logic is in dog bite cases, where a third party, bitten by a tenant's vicious dog, seeks compensation from the landlord as well." Bowers, 528 S.E.2d at 480-81.[6]

¶26 However, section 379A is consistent with Oklahoma jurisprudence with respect to dog attacks occurring on the landowner's property. See Hampton v. Hammons, 1987 OK 77, 743 P.2d 1053 (holding that a landowner may be liable for injuries caused by a dog attack where the landowner permits another to keep the dog on the landowner's property). Section 379A is also identical to fundamental landlord/tenant law.[7]

¶27 Consequently, we hold that the Hammonds, as landlords of the Drew Drive property, had a duty to protect Wishon from the type of injuries she received during the 2016 attack. Contrary to the concern expressed by the Dissent, this holding does not substantially broaden lessor liability for lessee activities. Courts have held landlords liable in similar circumstances since at least 1975.[8] Further, as previously discussed, Oklahoma City has already established such liability for dog attacks: "No person who has an ownership interest in real property shall permit another person to harbor . . . [a] dangerous or menacing" dog. OKC Mun. Code Ch. 8, Art. III, § 8-132(a). Dog attacks simply provide an additional example of when a landlord's duty to third parties is not automatically terminated by the execution of a lease.

¶28 Whether the Hammonds breached that duty is a different question. "'[I]n negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in the light of the apparent risk."' Brewer v. Murray, 2012 OK CIV APP 109, ¶ 10, 292 P.3d 41 (Approved for publication by the Supreme Court)(quoting William L. Prosser, Law of Torts, 324 (4th ed. 1971)). In this case, therefore, we must determine what the Hammonds should have done as reasonable landlords when transferring property to a tenant. The "standard of reasonable conduct" for the Hammonds in that circumstance is set out in section 379A.

¶29 Section 379A states both factors that a plaintiff must prove in order to establish that a landowner breached that duty: (1) the landowner consented to or knew the activity would occur, and (2) the landlord knew the activity would involve an unreasonable risk, or that the lessee would not take necessary precautions to protect another from harm. In order to recover, a plaintiff still will have to prove that the landlord's breach of this duty was the proximate cause of the plaintiff's injuries. Minor v. Zidell Trust, 1980 OK 144, ¶ 14, 618 P.2d 392 (stating that proof of proximate cause is "essential to recovery" in a negligence case).

¶30 With respect to the breach of duty issue, the relevant analysis dictated by the first prong of section 379A requires us to determine whether the Hammonds knew that Forest was keeping a dog or dogs at the Drew Drive property, had the ability to control that activity, but consented to Forest keeping the animals on their property.[9] From the summary judgment record, it is undisputed that the Hammonds knew that Forest kept a Pit Bull/Mastiff dog, Cain, on their property and that he did so with their permission. It is also undisputed that the Hammonds had the ability to control that activity. They prohibited all of their other tenants from keeping animals on their property and required those tenants to sign a written lease confirming that they would not do so. Whether the Hammonds also knew that Forest was keeping other dogs on the property is disputed. These facts, viewed most favorably to Wishon, satisfy the first prong of the section 379A test.

¶31 The second prong of the section 379A test requires proof that the Hammonds knew: (1) that Forest's dogs involved an unreasonable risk to others, or (2) that Forest would not take special precautions necessary for the safety of others like Wishon. Unless the material facts regarding those issues are undisputed and can be resolved in the Hammonds' favor, summary judgment was not proper. See First Nat'l Bank and Trust Co. of Vinita v. Kissee, 1993 OK 96, ¶ 7, 859 P.2d 502 ("[S]ummary judgment should be denied if the facts concerning any issue raised in the case are conflicting, or if reasonable people, in the exercise of fair and impartial judgment, might reach different conclusions upon consideration of any issue set forth in the case.").

¶32 As to those issues, the record shows that the Hammonds were familiar with the Pit Bull/Mastiff-mix breed of dog Forest owned. The Hammonds owned a littermate of Forest's male dog, Cain, and a sibling of his female dog, Rousey, the dog that attacked Wishon. A Pit Bull-mix owned by the Hammonds was known to be aggressive, it had charged people, growled and chased children on bikes, snapping at their heels. The Hammonds were notified by Oklahoma City Animal Welfare that Forest's dog was "unconfined" and advised that "they must keep their dog confined at all times." There are also evidentiary materials indicating that the Hammonds were told by a neighbor, prior to the attack on Wishon, that Forest's dog was never kept on a chain or in a pen despite their requests that the dog be confined. Oklahoma City Animal Control officers determined that Rousey, the dog that attacked Wishon, was sufficiently dangerous to require that the dog be euthanized.

¶33 As for any precautions necessary for the safety of others, the Hammonds provided a kennel for the Drew Drive property. However, the kennel was too small to contain Forest's dog on a long-term basis and was placed on sandy soil where it was easy for a dog to dig underneath and escape from confinement. That appears to have occurred on several occasions. The Hammonds were informed by Oklahoma City Animal Control that a dog or dogs kept on their Drew Drive property had gotten loose and was not properly confined. This record, viewed in the light most favorable to Wishon, fails to show that the Hammonds are entitled to judgment as a matter of law with respect to the second prong of the section 379A test. Hargrave v. Canadian Valley Elec. Co-op., Inc., 1990 OK 43, ¶ 14, 792 P.2d 50.[10]

¶34 In addition, much of the Hammonds' argument focuses on their contention that they only knew about one dog, Cain, and did not know about Rousey, the dog that attacked Wishon. First, that contention is contradicted by other evidentiary material in the summary judgment record. For example, during the time he lived on the Drew Drive property, Forest had regular social visits with the Hammonds. During those visits, they discussed dogs they owned, including Cain and Cain's littermate, the dog owned by the Hammonds. Although they repeatedly denied discussing Rousey during these conversations, the testimony of witnesses interested in the result of a suit, may be "sufficient to require the credibility of [the witnesses'] testimony to be submitted to the jury as a question of fact." Poafpybitty v. Skelly Oil Co., 1973 OK 110, ¶ 7, 517 P.2d 432.

¶35 Second, even if the Hammonds had established that they only knew about one dog, they did not meet their summary judgment burden. They were required to address "all theories of liability fairly encompassed within the evidentiary material presented." Parris v. Limes, 2012 OK 18, ¶ 3, 277 P.3d 1259. There are material facts, not addressed in this record, concerning whether the Hammonds took protective measures to discharge their duty to Wishon. For example, did they instruct Forest that he could only keep Cain on their property? Did they specifically prohibit him from keeping any other dog? Did Forest, without the Hammonds' knowledge, breach any term of the oral lease by keeping the animal that attacked Wishon? Favorable answers to these questions might persuade a jury that the Hammonds discharged their duty to Wishon. However, the absence of evidentiary materials in this record addressing those issues precludes summary judgment. "[O]nly if the movant for summary adjudication satisfies the initial burden to show entitlement to summary judgment is it incumbent on the non-movant to demonstrate by his/her own submissions the existence of a substantial dispute as to some material fact." Prudential Ins. Co. of America v. Glass, 1998 OK 52, ¶ 3, 959 P.2d 586.[11]

¶36 Finally, the authority cited by the Hammonds does not support their summary judgment argument. They rely on cases that are distinguishable from the facts and circumstances in this case because those cases involved an "absentee landlord" who had no knowledge of any dog kept on the landlord's property. For example, in Bishop v. Carroll, 1994 OK CIV APP 37, 872 P.2d 407, this Court held that a landlord, who did not live in Oklahoma, dealt with the tenants through her daughter, and had not visited the property after the tenants moved in, could not be held liable for a dog attack in the absence of any evidentiary material of record indicating her knowledge that any dogs were kept on the property. In Eastin v. Aggarwal, 2009 OK CIV APP 67, 218 P.3d 523, this Court also affirmed summary judgment in favor of landlords who resided outside of Oklahoma. The landlords dealt with the tenant through a property manager, required the tenant to sign a written lease that prohibited the tenant from keeping animals on the property and did not know the tenant had violated this lease term until notified that the tenant's dog had attacked the plaintiff. The plaintiffs in Bishop and Eastin failed to satisfy the first prong of the Restatement (Second) of Torts § 379A test because the landlords did not know about the existence of any dogs being kept on their property, nor did they consent to that activity.

¶37 In stark contrast to the absence of facts showing the landlords' "knowledge and consent" in our two previous cases, it is undisputed that the Hammonds knew that Forest was keeping a potentially dangerous dog on their property and that they consented to his doing so. Additional evidence may establish that the Hammonds took reasonable steps within their control to protect third parties from dog attacks, and, therefore, did not breach their duty to Wishon. If that evidence exists, Wishon may not be able to prove the second prong of the section 379A test. However, the Hammonds did not include such evidence in the summary judgment record. "The appellate court shall confine its review to the record actually presented to the trial court." Okla. Sup. Ct. R. 1.36(g), 12 O.S. Supp. 2015, ch. 15, app. 1.

CONCLUSION

¶38 The Hammonds were not "owners" of the dog that attacked Wishon. Consequently, they cannot be held liable for that attack pursuant to 4 O.S.2011 § 42.1 or the version of the Oklahoma City Municipal Code in effect when this attack occurred. The Hammonds were entitled to judgment as a matter of law on Wishon's negligence per se theory of liability and we affirm the trial court's summary adjudication of that issue.

¶39 However, as owners of the property where the dog that attacked Wishon was kept, the Hammonds owed Wishon a duty to protect her from an unreasonable risk of a dog attack. The undisputed facts and the reasonable inferences drawn from those facts show that the Hammonds knew dangerous dogs were being kept on their property and consented to that activity. They had the ability to control that activity because they refused to permit all of their other tenants to keep animals. The Hammonds have provided no evidence in this record showing that they chose to do so in this case. Like the Court in Hampton v. Hammons, 1987 OK 77, 743 P.2d 1053, and Hood v. Hagler, 1979 OK 163, 606 P.2d 548, we find the evidence offered in support of the Hammonds' motion for summary judgment insufficient to establish as a matter of law that the Hammonds did not breach their duty to Wishon.

¶40 Although we hold that the Hammonds owed Wishon a duty, that only resolves the legal issue presented by this appeal. Whether the Hammonds breached that duty is a question for the trier of fact, as is whether any breach of their duty was the proximate cause of Wishon's injuries. See Iglehart v. Bd. of Cnty. Comm'rs of Rogers Cnty., 2002 OK 76, ¶ 11, 60 P.3d 497. Based on the disputed facts concerning those issues in this record, the Hammonds are not entitled to judgment as a matter of law. The judgment in favor of the Hammonds with respect to Wishon's common law negligence theory of liability is reversed, and this case is remanded for further proceedings.

¶41 AFFIRMED IN PART, REVERSED IN PART AND REMANDED FOR FURTHER PROCEEDINGS.

BARNES, P.J., concurs, and HIXON, J., dissents.

FOOTNOTES

[1] The district court ordered that the judgment in favor of James and Rita Hammond be entered as a final judgment pursuant to 12 O.S.2011 § 994. By Order, the Supreme Court permitted this appeal to proceed while Wishon's suit against the other defendants was still pending.

[2] The Hammonds also argued that Wishon could not sustain her claim for punitive damages. Generally, a plaintiff's entitlement to punitive damages depends on questions of fact to be resolved by a jury. State ex rel. Pollution Control Coordinating Bd. v. Kerr McGee Corp., 1980 OK 166, ¶ 31, 619 P.2d 858. The Hammonds' motion for summary judgment does not establish as a matter of law that no reasonable jury could find a basis for imposing punitive damages with respect to Wishon's common law negligence claim. Consequently, Wishon's entitlement to punitive damages, if any, shall be resolved on remand in further proceedings pursuant to this Opinion.

[3] James Hammond testified that Forest bought the kennel because Forest did not like to keep his dog on a chain. In her Response to the Hammonds' summary judgment motion, Wishon relied on Forest's deposition to establish that the Hammonds provided the kennel. In their Reply, the Hammonds admitted that they provided the kennel to Forest for the purpose of keeping his dog confined. Consequently, this fact is no longer disputed.

[4] In their reply, the Hammonds objected to the evidentiary materials relied on by Wishon, and in particular, the signed but unsworn statements from the two witnesses to the attack and the various incident reports from the Oklahoma City Animal Control Division. The Hammonds argued that those statements and documents should be stricken because they were not "certified or authenticated." The Hammonds cited Unifund CCR, LLC v. Ekpo, 2014 OK CIV APP 73, 335 P.3d 271, as support for their argument. Their reliance was misplaced. Unifund concerned alleged assignment of debt documents attached to an affidavit, which were required to be certified by 12 O.S.2011 § 2056(E). No similar affidavit was submitted by Wishon. The Hammonds also argued that Wishon was required to submit "admissible evidence." No "admissible evidence" requirement applied to the evidentiary material Wishon submitted; rather, she was required to provide "acceptable evidentiary material." Okla. Dist. Ct. R. 13(b), 12 O.S. Supp. 2013, ch. 2, app. "[E]videntiary materials attached to a response to a motion for summary judgment are not held to the standard of competent, admissible evidence." Estate of Crowell v. Bd. of Cnty. Comm'rs, 2010 OK 5, ¶ 8, n.4, 237 P.3d 134 (citing Julian v. Secured Invest. Advisors, 2003 OK CIV APP 81, ¶¶ 17-18, 77 P.3d 604, and Davis v. Leitner, 1989 OK 146, ¶ 13, 782 P.2d 924). Rule 13(c) reaffirms that motions to strike are available to challenge "[e]videntiary material that does not appear to be convertible to admissible evidence at trial." See Davis v. Leitner, 1989 OK 146, ¶ 13 (stating it is sufficient that the evidentiary material "show the judge who is considering the motion that the party opposing the motion will be able at the time of trial to present competent, admissible evidence to support the allegations"). There is nothing in this record memorializing any ruling on the Hammonds' request to strike Wishon's evidentiary material, but they continue to press this issue in their Response to Wishon's Petition in Error. We assume the district court did not grant the Hammonds' motion and considered the evidentiary material Wishon presented. Nonetheless, it would have been error for the district court to strike Wishon's evidentiary material at this stage of the proceedings, particularly when Wishon's request to conduct, or complete discovery was denied. Id.

[5] "The Restatement has long been recognized as a material source of the common law." Bouziden v. Alfalfa Elec. Co-op., Inc., 2000 OK 50, ¶ 8, 16 P.3d 450 (Opala, J., dissenting) (footnotes omitted) (noting that a Restatement provision must be adopted to become the law of a jurisdiction). When Oklahoma has no statutory or decisional law addressing an issue, resort to the Restatement for guidance is appropriate. American Bank of Oklahoma v. Wagoner, 2011 OK CIV APP 76, ¶ 23, 259 P.3d 841 (Approved for publication by the Supreme Court).

[6] The following are additional cases applying Restatement (Second) of Torts § 379A to determine a landlord's liability for injuries caused by a tenant's dog who attacked plaintiffs, whether or not the plaintiff was on the landlord's premises: Berg v. Nguyen, 201 So.3d 1185, 1190 (Ala. Ct. App. 2016); Vigil By and Through Vigil v. Payne, 725 P.2d 1155, 1157 (Colo. App. 1986); Stokes v. Lyddy, 815 A.2d 263, 270-273, 280 (Conn. App. 2003); Solesky v. Tracey, 17 A.3d 718, 740-741 (Md. App. 2011); Knapton ex rel. E.K. v. Monk, 379 Mont. 1, 347 P.3d 1257 (2015); Uccello v. Laudenslayer, 118 Cal.Rptr. 741 (Cal. Ct. App. 1975); Strunk v. Zoltanski, 468 N.E.2d 13 (N.Y. 1984); Park v. Hoffard, 847 P.2d 852 (Or. Ct. App. 1993).

[7] See Restatement (Second) of Property: Landlord and Tenant § 18.4 (Am. L. Inst. 1977):

A landlord is subject to liability for physical harm to persons outside the leased property caused by activities of the tenant or others on the leased property after the landlord transfers possession only if:

(1) the landlord at the time of the lease consented to the activity or knew that it would be carried on; and

(2) the landlord knew or had reason to know that it would unavoidably involve an unreasonable risk, or that special precautions necessary to safety would not be taken.

[8] See cases cited supra note 6.

[9] The Dissent focuses on what the Hammonds knew at the time they leased the property to Ronald, that is, before dogs were brought onto the property. We find this focus to be misdirected. It is undisputed that the lease at issue did not have a specified term. The lease was for one month at a time. "A lease of real property, for a term not specified by the parties, is deemed to be renewed . . . at the end of the term implied by law . . . ." 41 O.S.2011 § 36. This month-to-month lease was renewed each month the Hammonds "accept[ed] rent" from Ronald. 41 O.S.2011 § 35. Comment "a" to section 379A of the Restatement (Second) of Torts states section 379A is "closely related" to the rule stated in section 837, "and should be read together with that Section." The Comments to Section 837 are applicable so far as they are pertinent." section 837 describes the liability of a lessor of land resulting from a nuisance caused by activities of the lessee if: "(a) at the time of the lease the lessor consents to the activity . . . ." The Comment to this "Clause (a)" provides that the landlord is also liable if the activity is carried on "at the time that the lessor renews the lease . . . ." The Hammonds' lease to Ronald was renewed the month that Forest moved onto the Drew Drive property with his dog and at the beginning of each month Forest occupied that property, including the month he acquired Rousey. The applicability of section 379A is not determined by what the Hammonds knew on the day they first leased the Drew Drive property to Ronald.

[10] The Dissent concludes that these factual issues can all be resolved in favor of the Hammonds because inferences favorable to Wishon are not reasonable or because Wishon did not produce sufficient evidentiary materials to counter the evidence offered by the Hammonds. We agree that "reasonable persons might reach different inferences or conclusions" from this record. Buck's Sporting Goods v. First Nat'l Bank & Tr. Co., 1994 OK 14, ¶ 11, 868 P.2d 693. However, in such circumstances, "motions for summary judgment should be denied . . . ." Id.

[11] See Residential Funding Real Estate Holdings, LLC v. Adams, 2012 OK 49, ¶ 17, 279 P.3d 788 (stating that focus in summary process is not on the facts which might be proven at trial but on evidentiary materials tendered by the movant and by the party opposing the motion, which must reveal only undisputed material facts supporting but a single inference that favors the movant). It is not Wishon's burden, as the Dissent argues, to come forward with evidence to refute the "facts" offered by the Hammonds "if the movant has not addressed all material facts" necessary to obtain summary judgment. Spirgis v. Circle K Stores, Inc., 1987 OK CIV APP 45, ¶ 10, 743 P.2d 682 (Approved for publication by the Supreme Court).

 

 

HIXON, J., dissenting:

¶1 I concur with the Majority opinion that James and Rita Hammond were not "owners" of the dog that attacked Wishon, and that the trial court correctly granted summary judgment to the Hammonds on Wishon's negligence per se theory. I respectfully dissent to the remainder of the opinion and would affirm the trial court's grant of summary judgment.[1]

 

¶2 In the absence of controlling Oklahoma Supreme Court authority, I take no issue with the Majority's suggestion that the Court may look to the test set forth in Restatement (Second) Torts § 379A, under the limited circumstances in which it might properly apply, as described below. However, I disagree with the way the Majority has applied section 379A here. The Majority interprets the two-prong test set forth in section 379A as the elements necessary to establish a landlord's breach of duty and/or ultimate liability for a tenant's activities that cause harm to third persons off the leased property. I interpret section 379A as the two-prong test that must be met to establish that landlord's duty to those third persons for the activities of a tenant on the property. Once duty is established, liability would flow from a landlord's breach of that duty, should he fail to exercise ordinary care for the protection of those third persons, and should plaintiff establish causation and damages.

¶3 Notwithstanding this difference of opinion on the correct application of section 379A, the key factual issues remain the same--whether, at the time the property was leased, James or Rita Hammond consented to the harm-causing activity or knew it would be carried on, and knew or had reason to know that it would unavoidably involve an unreasonable risk or that special precautions necessary to safety would not be taken. While I agree these are the facts to be addressed on summary judgment if section 379A applies, I respectfully disagree with the Majority's determination that the Hammonds failed to meet their burden to show they are entitled to judgment, or that Wishon successfully presented a genuine dispute of material fact on the relevant issues. 

a. Duty under section 379A

¶4 The Majority first states that a landlord has a duty of care to protect others from harm from dangerous conditions on and off his property, and that this duty is not abrogated by lease. Without restating the analysis in full, the Majority seems to reason that a landlord has an ever-present duty to third persons on or off the lease to keep his property in reasonably safe condition, regardless of whether the property is in the landlord's control, or the landlord even has knowledge of the activities. The Majority then applies the two-prong test under section 379A to establish the landlord's breach of that duty and liability for harm caused by an unreasonably dangerous activity of the tenant. However, this does not appear to be an entirely correct application of Oklahoma law or section 379A.

¶5 Typically, and as is noted by the Majority, absent a defective condition known to a landlord when the property is leased, the landlord is not liable to an injured third party where he has relinquished control of the property to the tenant. See e.g. Strader-Faiazi v. Edmond Fourth of July Festivals, 2001 OK CIV APP 93, ¶ 5, 28 P.3d 1161. As the Majority also notes, this is generally so because the law regards the lease as equivalent to a sale of the property, and an interest passed to the tenant in exclusive possession. Likewise, as a general rule, "tenancy alone will not render the landlord liable for the torts of his tenant." Coe v. Esau, 1963 OK 1, ¶ 5, 377 P.2d 815.[2] Inherent in these general rules is the recognition that a landlord would have no duty to exercise reasonable care for protection of third persons for hazardous conditions activities over which he has no control. Notably, the persuasive authority the Majority cites in support of this general rule of non-liability recognizes the landlord's lack of duty to third person for dangerous conditions after the lessee takes possession and control. See Stewart ex rel. Stewart v. Aldrich, 788 A.2d 603 (Me. 2002).[3]

¶6 Section 379A recognizes a limited exception to this lack of duty. If the landlord consents to the activity when the lease is entered and knows or has reason to know that it unavoidably involves an unreasonable risk, or that special precautions for safety will not be taken, then a duty arises. "[This] duty arises from the fact that the landlord has some control over the activities of the tenant, in that the landlord decides whether to rent to the tenant in the first place, renew or terminate the tenancy, or to impose conditions in the lease." Gross v. Turner, 195 A.3d 654, 658 (Vt. 2018) (citing Park v. Hoffard, 847 P.2d 852 (Or. 1993)). "By permitting a tenant to keep a dog that the landlord knows to be vicious, the landlord could be viewed as having created the risk that led to the third person's injuries." Id. (citing Strunk, 468 N.E.2d at 15). "Requiring the landlord to exercise due care to protect the public in such a situation is consistent with the general duty of care owed to the public by a landowner who personally carries on unreasonably dangerous activities on his or her land." Id. (citing Restatement (Second) of Torts § 371).

¶7 Yet, under section 379A, though the landlord may have the ability to control certain acts of the tenant through conditions in the lease, that duty is not all encompassing, nor should it be. Landlords are not obligated to monitor and regulate every act of a tenant. They are not obligated to divine at the time the property is leased every conceivable unreasonable risk in which a tenant might engage and prohibit it, upon pain of finding himself liable for any omission. Rather, this duty does not apply to every activity to which the landlord may have consented, but is necessarily limited to activities which will unavoidably involve an unreasonable risk of which the landlord knew or had reason to know at the time the lease was entered, or for which he knows special precautions will not be taken.

¶8 Knowledge or reason to know that one's conduct may foreseeably injure another is a key component of duty. See e.g. Trinity Baptist Church v. Brotherhood Mut. Ins. Services, LLC, 2014 OK 106, ¶ 8, 341 P.3d 75 ("As a general rule, 'a defendant owes a duty of care to all persons who are foreseeably endangered by his conduct with respect to all risks which make the conduct unreasonably dangerous.'"). "In order for a duty to arise to those persons bearing the duty's onus must have knowledge that their acts or omissions involve a danger to one another." Lockhart v. Loosen, 1997 OK 103, ¶ 13 n.26, 943 P.2d 1074.[4] The fact the landlord has leased property to a tenant is not itself conduct that one in the landlord's position should foresee poses an unreasonable danger to another, giving rise to a duty to protect third parties therefrom. It is the landlord's consent to activities by the tenant on the property that unavoidably involve an unreasonable risk when the property is leased, or for which the landlord knows special precautions will not be taken, which would render the harm foreseeable to the landlord and give rise to a duty of care under section 379A.[5] Hence, both prongs must be met to support such a duty.

¶9 Much of the persuasive authority cited by the Majority analyzing section 379A treats the factors as establishing a duty. See e.g. Berg v. Nguyen, 201 So.3d 1185, 1190 (Al. Civ. App. 2016)(characterizing section 379A as establishing an element of foreseeability to establish a duty; plaintiff did not present evidence of actual or constructive notice that dog posed a danger to persons or property, and facts concerning existence of a duty by defendant landlord were thus not in dispute, and defendants were entitled to judgment as a matter of law); Vigil By and Through Vigil v. Payne, 725 P.2d 1155 (Colo. Ct. App. 1986) (landlord with actual knowledge a tenant owns animal whose vicious actions prior to entering into lease was sufficient to demonstrate requisite duty of care; duty would require landlord to take such precautions as were in its control to protect third persons from injury to be foreseen if no precautions were taken); Solesky v. Tracey, 17 A.3d 718, 733 (Md. Ct. Spec. App. 2011) ("in order for a landlord to have any duty relative to a dangerous animal on the premises, there must be some evidence that the landlord knew of a dangerous condition created by the presence of the animal"); see also Strunk v. Zoltanski, 468 N.E.2d 13 (N.Y. 1984); also Knapton ex rel. E.K. v. Monk, 347 P.3d 1257 (Mont. 2015); Ucello v. Laudenslayer, 118 Cal.Rptr. 741 (Cal. Ct. App. 1975).

¶10 These courts' application of section 379A as a test for when the duty arises makes sense. The landlord does not owe a general duty to third persons for the torts of his tenant, or for the condition of the property, after the tenant assumes control. Rather, the lessor holds a duty to exercise reasonable care for the safety of third persons off the land for only those unreasonable risks to which he consented or allowed at the time of the lease. He does not have a duty of care for unreasonable risks he did not consent to at the time of the lease, or to protect third parties from a tenant's ordinary activities of which he knew or which he had reason to know, even if performed negligently. The existence of an unavoidable, unreasonable risk, and the landlord's consent thereto when the property is leased, is essential to whether a landlord has a duty to take precautions to protect third parties off the lease. To interpret section 379A otherwise creates a risk of expanding a landlord's duty beyond what I believe the Majority actually intended.[6]

¶11 Thus, while I take no issue with the Majority's reliance on section 379A, I respectfully disagree with the manner in which it is applied. The determinative issue here is whether a duty was established under the two-prong test of section 379A. Accordingly, the question is whether the Hammonds' proposed undisputed facts demonstrated a lack of duty under that framework, and whether Wishon established a genuine dispute of material fact on those issues.

b. Duty under the record in this case

¶12 The Hammonds presented evidence that they did not know of or consent to Rousey's (the attacking dog) presence when Forest came to live upon the property, and knew of no uncontained, aggressive dog on the property. These facts would support a determination that the Hammonds had no duty to Wishon, which Wishon was then obligated to dispute. In my opinion, the record does not contain evidence that raises a genuine dispute of material fact as to whether (a) the Hammonds at the time the property was leased consented to the keeping of Rousey or knew she would be kept on the property, and (b) the Hammonds knew or had reason to know that the keeping of Rousey would unavoidably involve such unreasonable risk, or that special precautions necessary to safety would not be taken. Indeed, none of the evidentiary material relied on by the Majority on this issue actually states or may fairly be interpreted to suggest the Hammonds knew Rousey was on the property, or was vicious, dangerous or aggressive.

¶13 With respect to the first prong, the Hammonds presented evidentiary material that they only consented to or were aware of one dog on the property, Cain, and that they were unaware of the presence of Rousey (the dog in question). It was then incumbent upon Wishon to present evidence raising a disputed question of fact as to whether the Hammonds consented to Rousey's presence or knew she would be present on the property at the time the lease was entered.[7] Wishon failed to do so.[8]

¶14 In an attempt to raise a dispute as to the Hammonds' knowledge of Rousey, Wishon cites to the Hammonds' regular social visits with Forest where other dogs were discussed. The Majority asserts the Hammonds' testimony that they never discussed Rousey may not be credible. I disagree this is a reasonable inference. While the trial court must take every inference from the evidence presented in favor of the non-moving party, the record here cannot be stretched to infer prior knowledge of Rousey. Wishon presented no evidentiary material that the Hammonds knew Rousey was or would be on the property. Further, I reject the assertion that Wishon only has to establish that the Hammonds knew that a dog of similar breed, i.e., Cain, was on the property. This is inconsistent with the language of section 379A requiring knowledge of or consent to the activity, i.e., Rousey's presence, as well as the second prong, which requires the lessor to know or have reason to know that the activity would unavoidably involve such an unreasonable risk, or that special precautions for safety would not be taken. Mere knowledge of the keeping of a dog, i.e., Cain, does not meet that requirement.

¶15 Specifically, with respect to the second prong of section 379A, the Hammonds presented evidentiary material that they had no knowledge of prior complaints of any aggressive dog owned by Forest as the potential unavoidable and unreasonable risk from Forest's activity. Wishon's evidentiary materials fail to raise a question of fact as to whether the Hammonds knew or had reason to know Rousey was an unreasonable risk to others or that Forest would not take special precautions to contain her.

¶16 First, Wishon introduced evidence that the Hammonds were familiar with the pit bull mix breed of dog and owned Cain's littermate, Bella. Cain was also purportedly a littermate of Rousey. Wishon referenced a handful of "incident detail" reports from a "Data Warehouse" dated 2012. At best, these reports show that four years prior to the incident in this case, a "wht brownish pitbull med size dog" got out from the Hammonds' residential address (a separate address from Drew Drive, where the attack occurred) and growled. These reports are not accompanied by any certification as a business record, affidavit of the author, or affidavit of those reporting the alleged incidents that might remove them from classification as hearsay or bring them within an exception. (Additionally, the only citation reportedly issued was that the dog was loose). Assuming these reports could be converted into admissible evidence, Rita Hammond testified she received Cain's littermate, Bella, at least two years later, in 2014. Wishon therefore did not present evidence in support of her contention this previous allegedly aggressive animal was a littermate of Rousey. Further, even if one could assume that all littermates of an aggressive animal will be likewise aggressive--an assumption unsupported by any evidence of record--that connection has clearly not been established here.

¶17 Wishon also presented evidence that the Hammonds knew Forest kept Cain, a pit bull mastiff mix, on the property, but Wishon presented no evidence that Cain was vicious, aggressive, or known to the Hammonds to be so.[9] Further, mere knowledge of a pit bull mix on the property does not raise a disputed question of fact of an unreasonable risk on the property. The record contains no testimony of a qualified expert or other competent evidence suggesting that one should reasonably assume by breed alone that every pit bull/mastiff mix is aggressive. Wishon cites no authority that establishes as a matter of law that this particular breed is to be considered aggressive, vicious or an unreasonable risk to others, or had been outlawed in this location. While the temperament and the dangers of the breed are a topic of frequent public debate, as well as prior attempts to outlaw the breed in some locations, I express no view or opinion on the hazards or propensities of this breed because personal opinion on that matter is irrelevant. The only matter for consideration here is what the evidence shows, and what may fairly be established as a matter of law. Something more than personal assumptions based on breed type or size is required to raise a question of fact on whether we may consider a dog an unreasonable risk. Thus, the appropriate question is not whether this breed or type of dog may be dangerous, but whether the particular dog at issue, Rousey, was known to the Hammonds to be dangerous before it attacked Wishon. See e.g. Eastin v. Aggarwal, 2009 OK CIV APP 67, ¶ 11 n.5, 218 P.3d 523 ("We note the evidence the record on appeal shows that pit bulls may be dangerous, but there is nothing in the record to create a question of fact that the dog at issue was known to be dangerous before the attack on Eastin's child, or that Appellees had notice of the dog's presence before the attack."). Even if we assume the Hammonds knew of Rousey, Wishon presented no evidence that the Hammonds knew Rousey was vicious or aggressive.

¶18 Wishon relied on her deposition testimony and unsworn hearsay statements from neighbors, the Holshousers, to establish that the Hammonds had prior knowledge of an unreasonable risk on the property. First, Wishon cited a single, incomplete page of her own deposition, which stated:

Q. Are you aware of any other complaints about dogs at this residence labeled No. 1 on Exhibit 1 that were made prior to the incident you had with the dogs in that area?

A. Complaints to whom?

Q. Anybody.

A. Yes.

Q. Tell me about those.

A. The Holshousers have made complaints to the Hammonds in person and to the City. They told me. . . .

Wishon did not provide the remainder of her answer to this question for the record. She did not establish whether these reports by the Holshousers were made to Forest or Ron Hammond, the owners of the dog and residents of the property, or to James and Rita Hammond. Moreover, the vague reference to "complaints about dogs" does not establish an unreasonable risk. Complaints about dogs could be as innocuous as a barking dog. Thus, while the Court must take every reasonable inference in favor of the non-moving party, respectfully, that obligation does not obligate the trial court to deny summary judgment based on muddied waters through vague and incomplete deposition excerpts.

¶19 Second, neither Holshouser actually stated they complained about a dog to James or Rita Hammond. Describing the attack on Wishon, Heart Holshouser stated that the neighbor who owned the pit bull involved in the attack was identified as Forest Hammond and "[i]t was determined he is living at a residence owned and insured by a relative named James Hammond . . . ." Tracy Holshouser stated she and her husband had confronted the neighbors about the dog, but never states they ever reported Rousey's behavior to James and Rita Hammond prior to this incident.

¶20 Heart Holshouser did purportedly write, "The pit bull that attacked Ms. Wishon has never been chained up or put in an enclosed dog pen despite our attempts to tell the dog owner or anyone in charge of the property to do so!" The Majority appears to read this statement as referring to a report to James or Rita Hammond. However, James and Rita were not the owners of the dog. The bare reference to having "attempt[ed]" to tell the dog owner or anyone in charge of the property neither reflects that such an attempt was successful, nor may be reasonably inferred to refer to James or Rita Hammond. "Or" is a disjunctive term, suggesting perhaps that Holshouser attempted to contact one or the other, but not both. Further, given that knowledge of James and Rita Hammond of Rousey's behavior is a key issue, had any of the Holshousers notified James or Rita before the incident, they would state as much. Lack of clarity does not require us to substitute potential but entirely unstated facts as "reasonable inferences" from the evidence submitted. Moreover, no such reasonable inference is available here when the statements are considered in context.

¶21 In describing the attack on Wishon, Heart Holshouser first states that she "believe[d]" that the dog was owned by someone at the Drew Drive property. She then described the attack and her report thereafter to Animal Welfare on that day, stating:

Additionally, [t]he neighbor who owns the Pit bull at 15813 Drew Driver was identified as Forest Hammond by Oklahoma City Animal Welfare. It was determined he is living at a residence owned and insured by a relative named James Hammond which is located within Oklahoma City Limits and subject to Oklahoma City Municipal laws.

(emphasis original). Immediately thereafter, she recounts that she had attempted to tell the owner of the dog or anyone in charge of the property about the dog. In its full context, Holshouser's statement negates a reasonable inference that she knew James or Rita Hammond owned the property before the incident and successfully managed to report Rousey's behavior to them.

¶22 As further support for her suggestion of the Hammonds' prior knowledge of an unreasonable risk, Wishon relied on an "Action Center Case Request" from the City of Oklahoma City in April 2015, prior to the attack (once again unaccompanied by any certificate of authenticity or affidavit), which refers to the Drew Drive address were Forest resided, stating "A [sic] unconfined dog warning notice will be sent to the owner of the dog advising them that they must keep their dog confined at all times. . . ." However, the actual warning notice generated by the City of Oklahoma City to the owner of the dog, if any, is not of record. Nothing in the Action Center Case Request indicates that notice was actually sent to the Hammonds, as opposed to Forest.

¶23 Wishon contended, and the Majority accepts, that the Hammonds "admit receiving other notices regarding the Drew Drive property." The Hammonds acknowledged receiving tax notifications regarding the property. Nothing of record establishes whether those notices were sent to the Drew Drive address or the Hammonds' residential address; that the same office sending tax notices would send a notice regarding a loose dog; that any notice sent to the Hammonds regarding Drew Drive by the City would go to their residential address; or that the Hammonds regularly received mail directed to the Drew Drive mailing address (as opposed to the residents of that property, Forest and Ron Hammond). The Hammonds also admitted they received a "letter" after the attack on Wishon. Wishon did not place that letter of record or establish who the letter was from, or where it was sent.

¶24 Accordingly, on the evidence presented, an inference that the Hammonds received an April 2015 notice to the "owner" of a loose dog sent to the Drew Drive address (which is not itself of record), or any other notice regarding Rousey's behavior, stretches a reasonable inference too far. Thus, and respectfully, there are no evidentiary materials in the record "indicating that the Hammonds were told by a neighbor prior to the attack on Wishon, that Forest's dog was never kept on a chain or in a pen despite their requests that the dog be confined" or that, prior to the attack, the Hammonds were "notified by Oklahoma City Animal Welfare that Forest's dog was 'unconfined' and that 'they must keep their dog confined at all times.'" There are also no evidentiary materials in the record supporting the Majority's interpretation that the Hammonds were informed that a dog or dogs kept on their Drew Drive property had gotten loose and were not properly confined. Nothing of record genuinely disputes the Hammonds' claimed lack of knowledge, or raises a genuine dispute of fact as to whether the Hammonds knew or had reason to know when the property was leased (or thereafter) that Forest's keeping of a dog, much less Rousey, on the property would unavoidably involve an unreasonable risk to others.

¶25 Likewise, there is no evidence of record raising a genuine dispute of fact as to whether the Hammonds knew that Forest would not take special precautions necessary to safety in light of that purported risk. The Majority acknowledges the Hammonds provided a kennel for the Drew Drive property, but concludes "[h]owever, the kennel was too small to contain Forest's dog on a long-term basis, and was placed on sandy soil where it was easy for a dog to dig underneath and escape from confinement. That appears to have occurred on several occasions." James Hammond testified that around the time Forest obtained Cain, Forest told James he did not like to keep Cain chained up and had obtained a kennel for him. Forest testified that James gave him the ten foot by twenty-foot pen for Cain, but that he only used it a couple of weeks because he "felt like [] wasn't enough room for him," and kept Cain on a chain. Wishon presented no evidence that the kennel was incapable of containing Cain or Rousey due to its size, and no evidence that the Hammonds were aware any dog, including Rousey, could or had dug out from the kennel. The facts of record are not sufficient to raise an inference that the Hammonds knew or had reason to know Forest would not or could not keep Cain, or more specifically Rousey, confined.

¶26 In sum, the record establishes nothing beyond the facts that the Hammonds knew of a dog on the property and provided a kennel for that dog. As outlined above, the evidence of record falls short of establishing a genuine dispute of material fact as to whether the Hammonds consented to or knew that Rousey was on the property either when they rented the property to Forest's grandfather or at any time when Forest was living on the property. The evidence also fails to establish a disputed fact that the Hammonds knew or had reason to know that Forest's keeping Rousey would unavoidably involve an unreasonable risk or that special precautions necessary to safety would not be taken.[10] Wishon presented no evidence to establish a dispute of fact as to either prong of section 379A necessary to give rise to a landlord's duty to third parties off-premises. While the Court must take every inference in light of the non-moving party, a key component of that obligation is to make reasonable inferences from the evidence of record alone. In so doing, I must respectfully dissent.

FOOTNOTES

[1] I would also affirm the trial court's denial of Wishon's request for further discovery. Wishon failed to supply a basis for further discovery, beyond a bare request in her response or an affidavit that facts essential to its opposition could not be obtained, as required by 12 O.S.2011, § 2056.

[2] In Coe, liability did not attach to the landlord for a tenant's faulty work based on the landlord/tenant relationship. The Court found the plaintiff failed to present sufficient evidence that the landlord had the ability to control or exercised the right to control the work performed by the tenant on the property.

[3] In Stewart, a tenant's dog attacked a minor child. Her mother brought suit against the landlord who had allowed the tenants to keep a dog, alleging that the landlord had a duty to ensure that the premises he rented did not possess any dangerous conditions and that he violated the duty by allowing the tenants to remain in the apartment with a dog he knew to be dangerous. The appellate court considered the landlord's liability for a dangerous condition on the property under Maine case law, which provided that a lessor was not subject to liability to lessee or others on the land for physical harm caused by a dangerous condition which came into existence after the lessee has taken possession, unless the landlord (1) failed to disclose a latent defect of which he knows or should have known which is not known to tenant or discoverable in the exercise of reasonable care; (2) gratuitously undertook to make repairs and did so negligently; or
(3) expressly agreed to maintain the premises in good repair. Id. at 606 (citing Nichols v. Marsden, 483 A.2d 341, 343 (Me.1984)). The court recognized the public policy consideration embodied by that test of control, to protect a landlord's ability to lease property without assuming inordinate liability for the conduct of his tenant, while protecting the tenant from the likely more significant regulation of the tenant's private conduct if the landlord were to be held liable therefore. The Stewart court thus concluded under this test, that the trial court had properly concluded the landlord did not owe a duty to plaintiff as a matter of law, due to his lack of control of the premises. Id. at 608. Stewart did not consider or address section 379A. While the legal analysis is different, the public policy considerations are similar in regard to the scope of such a duty.

[4] For instance, even between a landlord and the tenant themselves, the law recognizes a duty to act reasonably "when the landlord knew or reasonably should have known of the defective condition and had reasonable opportunity to make repairs." Miller v. David Grace, Inc., 2009 OK 49, ¶ 25, 212 P.3d 1223. "The landlord's knowledge is key in triggering the duty to maintain the leased premises in a reasonably safe condition." Id. at ¶ 28. Miller considered a landlord's duty to a tenant for injuries caused by a defective condition on the leased premises, and supplanted the doctrine of caveat emptor landlord immunity for a duty of care to maintain leased premises in reasonably safe condition, including those under a tenant's control.

[5] Further, a contractual right of a tenant to have a pet on the premises is not "tantamount to an owner's approval and knowledge of the presence of a dangerous animal." Robison v. Stokes, 1994 OK CIV APP 85, ¶ 7, 882 P.2d 1105. "Neither does an owner have a duty to inspect the property to check for bad dogs after the tenant has taken possession." Id.

[6] The Majority notes my concern that application of section 379A will expand tort liability. My concern is not, however, with reliance upon section 379A itself, as suggested. Rather, my concern is that the Majority's application suggests that a landlord has a duty of care to third persons arising from a dangerous condition on the property that is not abrogated by lease in all circumstances, even if the danger is created after the property is leased, and the hazard is created by or in the control of the tenant, which I do not believe is intended or correct, for the reasons described above. The Majority concludes this duty is or is not breached and the landlord liable, once the landlord meets the two prong test, i.e., he consented to the activity or knew it would be carried on, and knew or had reason to know it would unavoidably involve such an unreasonable risk, or that special precautions would not be taken. Reading the test this way seems to suggest that the landlord breaches his duty and is liable simply because he allowed the activity and knew it would constitute an unreasonable risk, or that special precautions would not be taken, without regard to whether the landlord has or has not exercised ordinary care to prevent harm to third parties thereafter. Nothing under Oklahoma law or section 379A suggests a landlord may be held strictly liable in this circumstance, even if it involves an unreasonable risk, nor do I think the Majority intends such a result. However, in my opinion, liability under a negligence theory would hinge upon whether the landlord has exercised ordinary care to protect third parties from injury once a duty has arisen based on the two prongs in section 379A, as well as proximate cause and proven damages.

[7] Section 379A requires knowledge or reason to know of this unreasonable risk at the time the lease was entered. The Majority posits the oral rental agreement between Ron and James Hammond would have been considered month-to-month. It concludes therefore that it is not necessary to show James Hammond knew of the dog when he leased the property to Ron. While the lease likely would be considered month-to-month, and one might conclude that the Hammonds knew and allowed Forest to keep Cain on the property at a time when the lease was entered or renewed month-to-month, the duty addressed by section 379A is not determined by the Hammonds' knowledge of Cain, or simply a dog. The issue is whether the Hammonds consented to the keeping of or knew of a vicious animal, Rousey, when the lease was entered or renewed. Wishon presented nothing to suggest the Hammonds knew Rousey was or would be on the property at the time the lease was entered whether one considers that time to be when Ron rented the property, when Forest and Cain came to live upon the property, or at any time thereafter.

[8] Much of Wishon's assertions are inconsistent with actual evidentiary materials submitted, to the extent admissible. For example, the Hammonds objected in their reply on summary judgment to Wishon's reliance on unsworn statements from two witnesses, the Holshousers, and reports from the Oklahoma City Animal Control division that are not authenticated, certified as a business record, or accompanied by affidavit. Both 12 O.S. § 2056 and Rule 13 of the Rules for District Courts state that affidavits must be made on personal knowledge, show the affiant is competent to testify on the matters asserted and must set forth matters admissible at trial. Rule 13 provides that "the admissibility of other evidentiary material filed by either party shall be governed by the rules of evidence" and allows a party to challenge material that does not appear to be convertible to admissible evidence by motion to strike or written objection. The burden to demonstrate the material would be convertible to admissible evidence appears to lie with the proponent, Wishon. See generally Davis v. Leitner¸1989 OK 146, ¶ 13, 782 P.2d 927; Battles v. Cough, 1997 OK CIV APP 62, ¶ 11, 947 P.2d 600. Nothing of record indicates the trial court struck Wishon's exhibits. Further, Wishon has not raised this as an assertion of error on appeal. Yet, the Majority asserts as dicta that the trial court would have erred had it stricken the exhibits. I disagree that it is appropriate to address this issue. Additionally, I question how the Majority can make this pronouncement on the entirety of the challenged evidence presented. Wishon made no response, and we have no transcript of the hearing on summary judgment. Looking to the materials alone, a portion of the evidence relied on are "Witness Statements" prepared for the purpose of this litigation that are neither sworn nor signed under penalty of perjury pursuant to 12 O.S.2011, § 426. I acknowledge that Davis allowed a letter in a witness's own handwriting to serve as evidence of a dispute of fact on summary judgment. I question whether the same latitude ought to be granted for a witness statement prepared expressly for litigation (the case number is on the typed statements) that sidesteps the easily-obtained assurances of an affidavit or declaration under penalty of perjury. However, even if such practices are permissible, a portion of the challenged evidence consists of unsigned "incident reports" from a source purely identified as "data warehouse," author unknown. Without more, I disagree these exhibits appear be convertible to admissible evidence on this record. However, it is unnecessary to resolve this issue. As addressed below, none of the contested evidence, taken as true, would raise a question of fact on the issue of duty.

[9] And, as stated above, the record contains no evidence that the Hammonds' own dog, Bella (the actual littermate) was aggressive, even if we may assume without expert testimony that a genetic relationship is an indicator of similar aggression in another animal.

[10] The Hammonds presented as proposed undisputed fact that they knew of and permitted only one dog on the property, Cain; did not know of any other dog; and had no knowledge of any prior complaints of an aggressive act of any dog owned by Forest before the incident. The Hammonds moved for summary judgment based on lack of duty. Under the authority presented, these facts are material and determinative of that issue. It was therefore Wishon's burden to dispute them, and she failed to do so. The Majority's proposition of additional material facts, not of record, pertaining to whether the Hammonds breached or discharged their duty, are thus irrelevant.

 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Court of Civil Appeals Cases

 
Cite
Name
Level

 
1987 OK CIV APP 45, 743 P.2d 682, 58 OBJ 1702, 
Spirgis v. Circle K Stores, Inc.
Discussed

 
1994 OK CIV APP 37, 872 P.2d 407, 65 OBJ 1368, 
Bishop By and Through Childers v. Carroll
Discussed

 
1994 OK CIV APP 85, 882 P.2d 1105, 65 OBJ 3363, 
Robison v. Stokes
Discussed

 
2001 OK CIV APP 93, 28 P.3d 1161, 72 OBJ 2221, 
STRADER-FAIAZI v. EDMOND FOURTH OF JULY FESTIVALS
Discussed

 
2003 OK CIV APP 81, 77 P.3d 604, 
JULIAN v. SECURED INVESTMENT ADVISORS
Discussed

 
2009 OK CIV APP 67, 218 P.3d 523, 
EASTIN v. AGGARWAL
Discussed at Length

 
2011 OK CIV APP 76, 259 P.3d 841, 
AMERICAN BANK OF OKLAHOMA v. WAGONER
Discussed

 
2012 OK CIV APP 109, 292 P.3d 41, 
BREWER v. MURRAY
Discussed

 
2014 OK CIV APP 73, 335 P.3d 271, 
UNIFUND CCR, LLC v. EKPO
Discussed

 
2020 OK CIV APP 70, 482 P.3d 17, 
AHLSTROM v. CAMPBELL REAL ESTATE
Discussed

 
1997 OK CIV APP 62, 947 P.2d 600, 68 OBJ 3671, 
Battles v. Cough
Discussed

Oklahoma Supreme Court Cases

 
Cite
Name
Level

 
1987 OK 77, 743 P.2d 1053, 58 OBJ 2210, 
Hampton v. Hammons
Discussed at Length

 
1989 OK 146, 782 P.2d 924, 60 OBJ 2833, 
Davis v. Leitner
Discussed at Length

 
1989 OK 147, 782 P.2d 927, 60 OBJ 2830, 
City of Lawton v. Barbee
Cited

 
1990 OK 43, 792 P.2d 50, 61 OBJ 1134, 
Hargrave v. Canadian Valley Elec. Co-op., Inc.
Discussed

 
1990 OK 77, 795 P.2d 516, 61 OBJ 2093, 
Wofford v. Eastern State Hosp.
Discussed at Length

 
1993 OK 96, 859 P.2d 502, 64 OBJ 2159, 
First Nat. Bank and Trust Co. of Vinita v. Kissee
Discussed

 
1994 OK 14, 868 P.2d 693, 65 OBJ 449, 
Buck's Sporting Goods, Inc. of Tulsa v. First Nat. Bank & Trust Co. of Tulsa
Discussed

 
1994 OK 41, 873 P.2d 1029, 65 OBJ 1422, 
Tinker Investment & Mortgage Corp. v. City of Midwest City
Discussed

 
1997 OK 103, 943 P.2d 1074, 68 OBJ 2550, 
LOCKHART v. LOOSEN
Discussed

 
1946 OK 113, 167 P.2d 884, 196 Okla. 633, 
MAGNOLIA PIPE LINE CO. v. OKLAHOMA TAX COMM'N
Discussed

 
1963 OK 1, 377 P.2d 815, 
COE v. ESAU
Discussed

 
1934 OK 375, 35 P.2d 916, 168 Okla. 603, 
CRANE CO. v. SEARS
Discussed

 
1973 OK 110, 517 P.2d 432, 
POAFPYBITTY v. SKELLY OIL COMPANY
Discussed

 
2002 OK 76, 60 P.3d 497, 
IGLEHART v. BOARD OF COUNTY COMMISSIONERS OF ROGERS COUNTY
Discussed at Length

 
2003 OK 50, 75 P.3d 883, 
BLITZ U.S.A., INC. v. OKLAHOMA TAX COMMISSION
Discussed at Length

 
1996 OK 48, 914 P.2d 1051, 67 OBJ 1173, 
Carmichael v. Beller
Discussed

 
2007 OK 81, 173 P.3d 64, 
WYLIE v. CHESSER
Discussed

 
1996 OK 125, 932 P.2d 1100, 67 OBJ 3566, 
Neil Acquisition, L.L.C. v. Wingrod Investment Corp.
Discussed

 
2009 OK 49, 212 P.3d 1223, 
MILLER v. DAVID GRACE, INC.
Discussed

 
2010 OK 5, 237 P.3d 134, 
ESTATE OF CROWELL v. BOARD OF COUNTY COMMISSIONERS
Discussed

 
2012 OK 18, 277 P.3d 1259, 
PARRIS v. LIMES
Discussed

 
2012 OK 49, 279 P.3d 788, 
RESIDENTIAL FUNDING REAL ESTATE HOLDINGS, LLC v. ADAMS
Discussed

 
1976 OK 178, 563 P.2d 620, 
HAAS v. FIRESTONE TIRE & RUBBER CO.
Discussed

 
2014 OK 68, 336 P.3d 457, 
WOOD v. MERCEDES-BENZ OF OKLAHOMA CITY
Discussed

 
2014 OK 106, 341 P.3d 75, 
TRINITY BAPTIST CHURCH v. BROTHERHOOD MUTUAL INSURANCE SERVICES, LLC
Discussed

 
2015 OK 56, 352 P.3d 1223, 
FARGO v. HAYS-KUEHN
Discussed

 
2017 OK 57, 398 P.3d 11, 
HENSLEY v. STATE FARM FIRE AND CASUALTY CO.
Discussed

 
1979 OK 138, 602 P.2d 1033, 
ROGERS v. HENNESSEE
Discussed

 
1979 OK 163, 606 P.2d 548, 
HOOD v. HAGLER
Discussed at Length

 
1980 OK 144, 618 P.2d 392, 
Minor v. Zidell Trust
Discussed

 
1980 OK 166, 619 P.2d 858, 
State ex rel. Pollution Control Coordinating Bd. v. Kerr-McGee Corp.
Discussed

 
2022 OK 45, 512 P.3d 345, 
COATES v. PROGRESSIVE DIRECT INSURANCE CO.
Discussed

 
2022 OK 51, 522 P.3d 473, 
HARWOOD v. ARDAGH GROUP
Cited

 
1998 OK 52, 959 P.2d 586, 69 OBJ 2148, 
PRUDENTIAL INSURANCE CO. v. GLASS
Discussed

 
2000 OK 50, 16 P.3d 450, 71 OBJ 1753, 
BOUZIDEN v. ALFALFA ELECTRIC COOPERATIVE, INC.
Discussed

Title 4. Animals

 
Cite
Name
Level

 
4 O.S. 42.1, 
Owner Liable for Damages from Dog Bites
Discussed at Length

Title 12. Civil Procedure

 
Cite
Name
Level

 
12 O.S. 426, 
Affidavit
Cited

 
12 O.S. 2056, 
Motion for Summary Judgment
Discussed at Length

 
12 O.S. 994, 
Procedure When There is More Than One Claim or Party - Final Judgment
Cited

Title 41. Landlord and Tenant

 
Cite
Name
Level

 
41 O.S. 35, 
Presumption of Renewal of Lease
Cited

 
41 O.S. 36, 
Lease of Real Property Deemed Renewed Unless Notice of Termination Given
Cited

 
41 O.S. 103, 
Application of Act
Cited

 
41 O.S. 117, 
Commencement of Tenancy - Delivery of Possession - Wrongful Possession
Cited

 
 

 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA